UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

Case No. _____

Proven Industries Inc, a Florida corporation

     *Plaintiff,*

      v.

Trevor McNally, individual

     *Defendant.*

_____/

## **<u>Verified Complaint for Damages and Demand for Jury Trial</u>**

     Plaintiff, Proven Industries Inc (hereinafter, "Proven" and/or "Plaintiff"), by and through their undersigned counsel, hereby file this Complaint against Defendant, Trevor McNally (hereinafter, "McNally" and/or "Defendant"), and alleges the following:

### **Introduction**

1.    This is an action for: (i) copyright infringement under 17 U.S.C. § 501 et seq.; (ii) defamation by implication under Florida law; (iii) false advertising under the Lanham Act, 15 U.S.C. § 1125(a); (iv) violation of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. § 501.201 et seq.; (v) tortious interference with business relationships; (vi) unjust enrichment; (vii) civil conspiracy; and (viii) trade libel under Florida law. Each cause of action is based on a distinct legal theory and seeks separate and non-

duplicative relief arising from different forms of harm caused by Defendant's conduct.

2.    McNally published and widely distributed a misleading and defamatory video purporting to demonstrate a vulnerability in Proven's proprietary lock product. The McNally Video used portions of Proven's copyrighted content without authorization, falsely depicted the product as ineffective, and resulted in reputational harm, lost sales, and increased marketing costs to Proven.

3.    McNally published a video on multiple social media platforms including YouTube, Instagram, TikTok, and Facebook. As of the date of filing, McNally has over 3.5 million, YouTube subscribers, 536,000 Instagram followers, 2.5 million TikTok followers, and 267,000 Facebook followers.

4.    On information and belief, McNally is affiliated with and/or an agent of Covert Instruments (hereinafter "Covert"), a company that sells lock-picking tools. McNally lists Covert's website on his social media pages, and Covert Instruments' website features McNally and benefits from the misleading content McNally produces.

5.    McNally published the video in a manner that intentionally targeted and caused foreseeable harm to Proven Industries in the Middle District of Florida. Although McNally did not film the video in Florida, McNally committed intentional torts—including defamation by implication, copyright infringement, and unfair trade practices—knowing that Proven, a Florida-based company, would suffer reputational and commercial injury in this District.

**Jurisdiction and Venue**

6.    This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1338(a) (federal questions: copyright and Lanham Act), and supplemental jurisdiction under 28 U.S.C. § 1367 over the related state-law claims.

7.    Personal jurisdiction is proper under Florida long-arm statute, Fla. Stat. § 48.193, because McNally committed intentional torts—including willful copyright infringement, defamation by implication, and deceptive trade practices—that McNally knew or should have known would cause injury in Florida. Although McNally resides in Virginia, McNally directed his conduct toward a Florida-based business with the intent to affect its operations, making his actions purposefully directed toward Florida for jurisdictional purposes.

8.    Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the claims occurred here, and the harm was suffered here.

9.    Plaintiff has complied with all conditions precedent to the filing of this action. To the extent that Fla. Stat. § 770.01 applies, Plaintiff provided the required notice to Defendant prior to filing suit.

## Parties

10.    Plaintiff, Proven Industries Inc, is a Florida corporation with its principal place of business in Florida.

11.    Defendant, Trevor McNally is an individual above the age of majority residing in Virginia.

12.    Defendant, Trevor McNally maintains an online presence for commercial purposes under the user display name "McNallyofficial".

## Factual Allegations

13.    Plaintiff, Proven Industries, Inc., is the sole author and copyright owner of a video titled "YOU GUYS KEEP SAYING YOU CAN EASILY BREAK OFF OUR LATCH PIN LOCK" (the "Proven Video").

14.    The Proven Video was completed and first published on March 3, 2025.

15.    The Proven Video was uploaded to Plaintiff's official YouTube Shorts account, its Tik Tok account, its Instagram account, and its Facebook account on March 3, 2025.

16.    The Proven Video consists entirely of original audiovisual content created by Plaintiff as a work made for hire and includes original cinematography, visual effects, product demonstration, branding, scripting, and editing.

17.    The Proven Video is registered with the United States Copyright Office under Registration No. PA 2-524-347. A true and correct copy of the Certificate of Registration is attached hereto as **Exhibit A**.

18.    The effective date of registration is April 7, 2025.

19.    Defendant extracted, reproduced, and republished a portion of the Proven Video without authorization.

20.    McNally published the subject video (the "McNally Video") on April 3, 2025.

21.    The McNally Video was uploaded to McNally's YouTube Shorts, TikTok, Instagram, and Facebook accounts.

22.    The video is accessible from devices located within the Middle District of Florida at the following URLs:

   a. YouTube Shorts: https://www.youtube.com/shorts/YjzlmKz_MM8

   b. Instagram: https://www.instagram.com/p/DIAH9vps19y/?hl=en

   c. TikTok: https://www.tiktok.com/@mcnallyofficial/video/7489223700735118622

   d. Facebook: https://www.facebook.com/share/r/1ZicXjkyNb/

23.    The McNally Video incorporates an EXACT copy of excerpts of the Proven Video at its outset and uses it without transformation or commentary, except to frame it for ridicule.

24.    Attached in **Exhibit B** is a composite of still images of the McNally Video – showing that McNally copied EXACT portions of the Proven Video.

25.    Shown directly below is a first representative still image of the McNally Video – showing that McNally made an EXACT copy of excerpts of the Proven Video.



26.    As shown on the page directly above, the McNally Video published by McNally begins with the audio and visual work of the Proven Video.

27.    Shown directly below is a side-by-side comparison that serves as a representative example of how the McNally Video includes an exact reproduction of the Proven Video.

 

**Proven Video (*left*)**         **McNally Video (*right*)**

28.    As shown directly above, the image on the left is a frame from the original Proven Video published by Plaintiff, and the image on the right is a corresponding frame from the McNally Video published by Defendant. The closed captioning of the audio is the same on both still images – reciting, "today

I'm going to prove". The images are nearly identical in content, showing the same background, subject, gesture, lighting, and attire. The McNally Video replicates the exact moment from the Proven Video, including the same individual, motion, and visual sequence. The juxtaposition of these frames shows that Defendant copied and republished a portion of Plaintiff's original copyrighted video verbatim and without transformation, modification, or commentary.

29.     Approximately two seconds into the McNally Video, the footage shifts to a point-of-view perspective in which Defendant is shown watching the Proven Video on a mobile device. The Proven Video is visibly displayed on the screen, and its original audio is clearly audible within the McNally Video. Shown directly below is a second representative still image of the McNally Video.



30.    The portion of the Proven Video that Defendant copied, as shown on McNally's phone in the still image of the video shown directly above on the preceding page, is used by McNally as a visual and thematic springboard for Defendant's performance, and was not shared via embed, remix, or other platform-native features.

31.    The first approximately sixteen seconds of the McNally Video consist of spliced excerpts taken directly from the Proven Video. These excerpts include both visual and audio elements and were arranged by Defendant without transformation, commentary, or attribution. Although the excerpts are non-continuous, they collectively depict key portions of the Proven Video, including the company's logo, product description, demonstration footage, and an image of a Proven employee.

32.    The McNally Video, with its editing, timing and context, gives consumers the false or at least misleading, impression that shimming Proven's lock is mere "child's play."

*[Remainder of Page Intentionally Left Blank]*

33.    In the McNally Video, McNally appears swinging his legs and sipping from an apple juice box, conveying to the purchasing public that bypassing Plaintiff's lock is simple, trivial, and even comical. Shown directly below is a third representative still image of the McNally Video, showing McNally drinking from, and shaking, a juice box, all while swinging his legs, and displaying the Proven Video on a mobile device. The audio from the Proven Video was not playing out of the mobile device, rather, was extracted from the Proven Video, and played over the McNally Video so that it could be clearly heard by viewers.



34.    The tone, posture, and use of the juice box prop and childish leg swinging that McNally orchestrated in the McNally Video was intentional to diminish the perceived seriousness of Proven Industries as a professional manufacturer

and falsely imply that the company markets products that are unserious, insecure, or not worthy of consumer trust.

35.    The lock-picking sequence is edited to appear as a single, continuous 12-second event. Visual inconsistencies, including changes in the shim's shape, hand positioning, and lighting, indicate the footage was edited or re-shot and spliced to present a simplified narrative.

36.    Shown directly below is a fourth representative still image taken from the McNally Video at approximately the 19–20 second mark, which depicts a first appearance of the shim used by McNally in McNally's lock-picking demonstration.



37.    Shown directly below is a fifth representative still image taken from the McNally Video at approximately the 30 second mark, which depicts a second appearance of the shim used by McNally in McNally's lock-picking demonstration.



38.    A comparison between the first application of the shim and its second appearance in the McNally Video reveals that the cutout or notch in the shim

appears to differ in size between the two shots, suggesting that different shims were used or that the footage was edited between attempts.

39.    This visual inconsistency supports the inference that the McNally Video was not filmed in a single, continuous take and was edited to conceal failed or repeated attempts at bypassing the lock.

40.    Attached in **Exhibit C** is a composite of additional still images taken from the McNally Video showing discrepancies in the McNally Video which are indicative of misleading editorial practices by McNally.

41.    While the shim is briefly visible in the McNally Video, Defendant failed to disclose that successfully bypassing the lock required prior disassembly of the product to examine its internal components, including the position of the plunger, and to manufacture a custom-fit shim with precise notch dimensions.

42.    This omitted context misleadingly suggests that the bypass could be performed easily without specialized knowledge, preparation, or internal measurement.

43.    Although Defendant makes no verbal statements in the McNally Video, the video communicates materially false and misleading messages through its visual narrative, editing choices, tone, and omissions. Specifically, the McNally Video falsely implies that Plaintiff's lock product can be easily and trivially bypassed by an unskilled person in a matter of seconds using basic tools, without any prior disassembly or technical preparation. The use of juvenile imagery, such as sipping from a juice box while casually applying the shim, reinforces the misleading impression that the lock is inherently insecure and marketed deceptively — all of which is implied without any express claim being

made.

44.     The Infringing Video begins with excerpts from Plaintiff's professionally produced promotional video showing its branded product demonstration, including voiceover descriptions and visuals of the product in use. The video then abruptly shifts to Defendant in a childlike persona, sipping from a juice box and casually applying a shim to the lock. The video omits any reference to preparation, tooling, or disassembly, and presents the lock bypass as effortless and trivial. The overall presentation implies to the average viewer that Plaintiff's product lacks meaningful security and that Plaintiff misrepresents its functionality to the public.

45.     Defendant's reuse of the Proven Video was not authorized by Plaintiff and was not confined to any fair use or statutory exemption.

46.     The portion of the Proven Video copied by Defendant was not used for commentary, criticism, education, or news reporting, but rather for commercial entertainment and mockery.

47.     Defendant's use was not transformative; the excerpt was copied verbatim and used to mischaracterize and target Plaintiff's product, rather than to provide any genuine analysis or new expressive purpose.

48.     The reproduction of Plaintiff's copyrighted material was not necessary to convey any legitimate message, and was instead included to improperly attract attention, ridicule Plaintiff, and frame the lock product as insecure and trivial.

49.     Defendant's use of the Proven Video competed with Plaintiff's original publication on the same social media platforms, diverted traffic and engagement, and impaired the market value and licensing potential of the

original work and advertised product.

50.    On YouTube, Defendant's use exceeded the limited license available to users, which permits only playback or embedding. McNally created a separate, monetized derivative work from Plaintiff's copyrighted content.

51.    On Facebook and Instagram, McNally's reuse of the Proven Video violated Meta's Terms of Use and Community Standards, which prohibit users from uploading copyrighted content without permission. Meta does not grant content licenses between users.

52.    On TikTok, although users may remix content within the platform, McNally did not use TikTok's built-in tools to remix or stitch the Proven Video. Instead, McNally uploaded a pre-produced video ("McNally Video") incorporating Plaintiff's copyrighted content without permission.

53.    McNally warranted to TikTok that McNally owned or had rights to all content in the McNally Video, as required by TikTok's Terms of Service. That warranty was false.

54.    The McNally Video contains no disclaimers, limitations, or clarifications about the video's context, setup, or repeatability under normal conditions.

55.    As of April 17, 2025:

    a. The McNally Video received over 9.6 million views, 435,000 likes, and 6,262 comments on YouTube Shorts;

    b. on Instagram, it received over 514,000 likes, 3,190 comments, and 20,000 shares;

    c. on TikTok, it received over 3.2 million views, 314,900 likes, 1,981 comments, and 17,100 saves; and

d. on Facebook, it was posted to McNally's account, which has over 267,000 followers.

56. Following publication, Plaintiff received public comments and customer inquiries referencing the McNally Video and expressing concern or doubt about the integrity of Plaintiff's product.

57. On information and belief, Plaintiff lost business opportunities with commercial customers who viewed the McNally Video and opted not to purchase or proceed with intended transactions.

58. Plaintiff incurred reputational damage, customer confusion, and the need for emergency marketing and advertising techniques and procedures to mitigate the harm caused by the McNally Video.

59. McNally monetizes his content across platforms and links to Covert Instruments—a company that sells lock-picking tools—across his social media profiles.

60. On information and belief, McNally receives compensation or other commercial benefits from his publication of the McNally Video.

61. On information and belief, McNally receives compensation or other commercial benefits from his affiliation with Covert Instruments.

62. On information and belief, McNally coordinated with individuals at or affiliated with Covert Instruments to produce and publish the McNally Video.

63. Following publication of the McNally Video, McNally's followers began engaging in a coordinated pattern of online harassment targeting Plaintiff.

64. Numerous of McNally's followers have commented on Plaintiff's social media posts with disparaging, threatening, or mocking language, often echoing

the themes, imagery, and misleading implications conveyed by the McNally Video, as illustrated by representative examples attached hereto as **Exhibit D**.

65.   Plaintiff's customer service channels received abusive or misleading messages from individuals who identified themselves as viewers of the McNally Video. Exhibit D.

66.   Numerous false or negative online reviews and comments referencing McNally's video appeared across platforms shortly after its publication, suggesting a coordinated response from McNally's audience. Exhibit D.

67.   On information and belief, McNally knew or should have known that publishing the McNally Video to his audience of millions would incite a wave of targeted hostility toward Plaintiff located in the Middle District of Florida.

68.   McNally's substantial social media reach—over 3.5 million YouTube subscribers, 2.5 million TikTok followers, 536,000 Instagram followers, and 267,000 Facebook followers—amplified the harm and enabled large-scale reputational injury.

69.   The conduct of McNally's followers, acting in concert and with knowledge of the McNally Video's purpose, contributed directly to the harm suffered by Plaintiff and was foreseeable, encouraged, and ratified by McNally's platform and silence.

70.   The timing, content, and branding of the McNally Video reflect a common plan to disparage Plaintiff and promote Covert Instruments' affiliated products and services.

71.   McNally's conduct was part of a broader scheme to harm Plaintiff's

business reputation and drive consumer attention to alternative products or services affiliated with him.

72.    McNally acted with actual malice or with reckless disregard for the truth by knowingly presenting a misleading demonstration and suppressing key context.

73.    McNally failed to exercise reasonable care or competence in assessing and representing Plaintiff's product, despite presenting himself as an expert.

74.    McNally's use of the Proven Video was not incidental, transformative, or justified—it was commercial, deliberate, and intended to attract viewership and revenue by disparaging Plaintiff's product.

75.    McNally unjustly retained commercial benefits from this conduct, including increased engagement, monetization, promotional clicks, and affiliate traffic.

76.    Defendant's conduct was not a one-time error in judgment, but rather a calculated effort to ridicule Plaintiff's product and brand before a massive online audience, knowing that doing so would spark reputational harm and commercial loss.

77.    Defendant published the McNally Video with actual knowledge that its visual editing, omissions, and mock tone would lead viewers to believe that Plaintiff's lock product was ineffective and deceptively marketed — despite Defendant knowing that bypassing the lock required specialized preparation and manipulation not disclosed to the viewer.

78.    Defendant acted with deliberate indifference to the truth, including by failing to disclose that the lock was disassembled and studied in advance, that

a custom shim was designed to defeat it, and that the lock's bypass was staged and edited for effect.

79.    Rather than publish fair commentary or criticism, Defendant selected and copied branded portions of Plaintiff's copyrighted video, stripped of context, and presented them with mocking theatrics and edited staging — for the deliberate purpose of humiliating Plaintiff and falsely implying its product is insecure.

80.    Defendant is a self-described lock expert with over 3.5 million YouTube subscribers and commercial ties to Covert Instruments — a company that markets lock picking tools. Defendant was fully aware of the weight his endorsement or criticism carries and exploited that authority to discredit Plaintiff's product for financial gain.

81.    Defendant failed to issue any clarification, disclaimer, or correction despite knowing that his followers were using the McNally Video to launch disparaging, harassing, and defamatory attacks on Plaintiff through coordinated online messaging, including threats, false reviews, and customer service abuse.

82.    On information and belief, Defendant collaborated with individuals affiliated with Covert Instruments in developing, editing, and disseminating the McNally Video, in furtherance of a commercial scheme to divert attention from Plaintiff's product to competing tools or services.

83.    Defendant monetized the McNally Video, promoted affiliated commercial links alongside it, and knowingly submitted false licensing representations to social media platforms to obtain algorithmic amplification

and increased monetization — despite knowing that he lacked rights to Plaintiff's copyrighted content.

## Count I
### Copyright Infringement
### 17 U.S.C. §501 et seq.

84.    Plaintiff repeats and realleges paragraphs 1 through 83 as if fully set forth herein.

85.    This count arises from Defendant's unauthorized reproduction and public display of protected audiovisual content owned by Plaintiff, and seeks statutory or actual damages, along with injunctive relief under the Copyright Act

86.    Plaintiff owns a valid and registered copyright in the Proven Video.

87.    Defendant copied, reproduced, publicly displayed, and distributed substantial portions of the Proven Video without authorization, including on YouTube, TikTok, Instagram, and Facebook.

88.    Defendant's conduct was not authorized by license, not excused by fair use, and was done for commercial purposes.

89.    Defendant acted willfully and in reckless disregard of Plaintiff's exclusive rights.

90.    Defendant's infringement was willful because McNally knowingly uploaded Plaintiff's copyrighted content to social media platforms including but not limited to YouTube, Instagram, and Facebook, under the guise that McNally either owned the content or had permission to distribute it — a prerequisite under each platform's Terms of Service.

91.    Defendant's false certifications enabled him to gain preferential

algorithmic exposure, monetization, and viral reach using Plaintiff's content, further demonstrating the commercial motive and knowing violation of Plaintiff's rights.

92.    As a direct result of the infringement, Plaintiff suffered damages including, but not limited to, loss of control over its intellectual property, lost licensing opportunities, reputational harm, and diminution in the value of the copyrighted work.

## Count II
## Defamation by Implication

93.    Plaintiff repeats and realleges paragraphs 1 through 83 as if fully set forth herein.

94.    This count arises from Defendant's publication of the McNally Video, which, through tone, editing, omission, and visual presentation, falsely implied to viewers that Plaintiff's business was dishonest or incompetent and that Plaintiff's lock product was inherently untrustworthy.

95.    Although the McNally Video did not explicitly state that Plaintiff committed fraud or sold a defective product, Defendant juxtaposed facts and edited content in a way that conveyed a defamatory implication — namely, that Plaintiff markets a security device that is ineffective, deceptively advertised, and easy to defeat by even an unskilled user.

96.    Defendant's McNally Video downplays the difficulty of shimming Proven's lock by making it seem as if shimming the lock is mere "child's play" by having the actor sip apple juice from an apple juice box and swing his legs in in a childlike manner – all while the actor watches Proven Video on a mobile device, which was specifically designed to ridicule Plaintiff and to suggest that

its product is so flawed that it poses no real security barrier.

97.    These implications were materially misleading and false, and they were conveyed to millions of viewers across multiple platforms including YouTube, TikTok, Instagram, and Facebook.

98.    Defendant acted with actual malice or reckless disregard for the truth by presenting the product demonstration out of context, omitting necessary disclosures (such as the use of a custom shim, manipulation time, or setup), and selectively editing the footage to mislead viewers about the real-world difficulty of compromising the product.

99.    Viewers understood the McNally Video to imply that Plaintiff's product — and by extension, Plaintiff's company — was disreputable or fraudulent. The implications extended beyond the product itself to cast doubt on Plaintiff's honesty, competence, and value as a manufacturer.

100.    As a direct and proximate result of these defamatory implications, Plaintiff and Plaintiff's product's reputation suffered reputational injury, public ridicule, diminished trust within the customer base, and measurable economic harm in the form of lost goodwill, canceled transactions, and the need for emergency marketing expenditures.

### Count III
### False Advertising
### 15 U.S.C. §1125(a)

101.    Plaintiff repeats and realleges paragraphs 1 through 83 as if fully set forth herein.

102.    This count arises from the Defendant's materially false or misleading statements made in commercial promotion that misled consumers and diverted

business from Plaintiff.

103.   These misrepresentations were made in commercial promotion and are likely to influence consumer purchasing decisions.

104.   Defendant's false claims about the ease of bypassing the lock were material and deceptive.

105.   Defendant's false representations were made in connection with the commercial promotion of alternative products or services affiliated with Defendant and/or Covert Instruments, and therefore directly harmed Plaintiff's commercial interests and consumer perception in the marketplace.

106.   Plaintiff suffered actual harm to its business, reputation, and goodwill.

107.   As a result, Plaintiff suffered actual harm including lost sales, reduced consumer confidence, market confusion, and increased costs to counteract false perceptions of its product.

## Count IV
## Violation of FDUTPA
## Fla. Stat. §501.201 et seq.

108.   Plaintiff repeats and realleges paragraphs 1 through 83 as if fully set forth herein.

109.   This count arises because the Defendant engaged in deceptive and unfair practices in the course of trade and commerce by publishing misleading and materially false representations that affected Plaintiff's business operations and Florida consumers.

110.   Such deceptive acts included: (a) using Plaintiff's copyrighted content without authorization, (b) editing or presenting the content to imply product failure, and (c) omitting context regarding custom tools and manipulation time

necessary to perform the bypass shown.

111.    Defendant's conduct was likely to mislead reasonable consumers and had the capacity to deceive the public into believing that Plaintiff's product was defective, insecure or easily shimmed, when in fact it was not.

112.    Defendant's actions were not merely opinion or puffery but constituted factual misrepresentations relating to the quality, functionality, and performance of a consumer product.

113.    As a direct and proximate result of Defendant's deceptive and unfair practices, Plaintiff suffered actual damages, including lost customer relationships, diminished consumer trust, and the need for corrective advertising and public relations expenditures.

**Count V**
**Tortious Interference with**
**Prospective Business Relationships**

114.    Plaintiff repeats and realleges paragraphs 1 through 83 as if fully set forth herein.

115.    This count arises from Defendant's intentional disruption of Plaintiff's business relationships and prospective contracts.

116.    Plaintiff had valid business relationships with existing and prospective customers, including trailer manufacturers, distributors, and end-users.

117.    Defendant knew of these relationships or reasonably should have known of them.

118.    Defendant intentionally and unjustifiably interfered with these relationships by publishing false, disparaging, and misleading content.

119.    Defendant's conduct, including the publication of the McNally Video and

the resulting coordinated activity by his followers, interfered not only with Plaintiff's customer relationships but also with Plaintiff's advertising efforts and marketing channels, causing reduced ad engagement, increased negative responses to paid placements, and the need for unplanned emergency media spend.

120.   Plaintiff lost business and revenue as a result of such interference, including canceled commercial transactions, terminated sales leads, and interruption of planned advertising strategy.

## Count VI
## Unjust Enrichment

121.   Plaintiff repeats and realleges paragraphs 1 through 83 as if fully set forth herein.

122.   This count arises from Defendant's unauthorized use and monetization of Plaintiff's content and seeks equitable relief therefor.

123.   Defendant misappropriated Plaintiff's copyrighted content and used it to generate engagement, revenue, and traffic to his own platforms and affiliate entities.

124.   Defendant's enrichment was not limited to monetization or exposure; it was also derived by falsely warranting to social media platforms that McNally had the rights to use Plaintiff's copyrighted content, thereby bypassing platform restrictions and gaining algorithmic distribution and user trust that would otherwise have been denied.

125.   Defendant's conduct violated the spirit and letter of the limited user licenses granted under YouTube, TikTok, and Meta's Terms of Service, resulting in additional inequitable benefit.

126.   Defendant retained a benefit to which McNally was not entitled, and it would be inequitable for Defendant to retain that benefit without compensation to Plaintiff.

127.   As a result, Plaintiff was deprived of control over its copyrighted work, licensing revenue, and competitive market position.

## Count VII
## Civil Conspiracy

128.   Plaintiff repeats and realleges paragraphs 1 through 83 as if fully set forth herein.

129.   This count arises from a coordinated and intentional effort by Defendant, acting in concert with third parties, including Covert Instruments and others, to cause reputational and commercial harm to Plaintiff through the production, distribution, and amplification of the McNally Video and the resulting wave of disparagement.

130.   On information and belief, Defendant entered into an agreement or common plan with one or more individuals affiliated with Covert Instruments to publish a misleading and harmful McNally Video targeting Plaintiff's lock product, with the shared purpose of damaging Plaintiff's reputation and market share while promoting Covert's lock-picking tools and related products.

131.   The McNally Video prominently featured branding, language, and promotional elements tied to Covert Instruments, including outbound links to Covert's website in the social media bios affiliated with McNally. Covert Instruments' website likewise featured Defendant and benefited from the publication.

132.   Following publication of the McNally Video, Defendant's large online

following engaged in coordinated online conduct that included mass commenting on Plaintiff's social media, spreading mocking and threatening language, posting negative reviews, and submitting disruptive communications to Plaintiff's customer service channels.

133. This conduct was foreseeable and encouraged by the tone, messaging, and platform reach of Defendant's McNally Video. Defendant and Covert Instruments ratified and benefited from the campaign without disavowing or attempting to mitigate the resulting harm to Plaintiff.

134. The conspiracy's objective was to inflict reputational injury, interfere with Plaintiff's business relationships, and suppress commercial demand for Plaintiff's products in favor of alternatives promoted by Covert Instruments and affiliated with Defendant.

135. As a direct and proximate result of the conspiracy and resulting acts in furtherance of it, Plaintiff suffered reputational harm, loss of sales, cancellation of prospective customer relationships, and increased expenditures to restore brand integrity and public trust.

## Count VIII
## Trade Libel

136. Plaintiff repeats and realleges paragraphs 1 through 83 as if fully set forth herein.

137. This count arises from false and disparaging statements published by Defendant concerning the quality, functionality, and performance of Plaintiff's physical product — namely, its proprietary trailer lock — as opposed to Plaintiff's brand or reputation.

138. Defendant published and widely disseminated the McNally Video to

third parties that portrayed Plaintiff's lock as defective and easily bypassed. The presentation mischaracterized the product's security features and falsely suggested that it could be compromised in seconds using basic tools.

139.    These statements and implications were made with malice or with reckless disregard for the truth and without due diligence or technical accuracy. Defendant omitted critical context, including the use of specialized tools, rehearsal time, or manipulated conditions that would not be present in real-world use.

140.    The statements were materially false and concerned the product's physical attributes, mechanical performance, and suitability for its advertised use — all of which are provable and verifiable facts.

141.    Defendant made these statements publicly, and they were viewed by millions of consumers, including prospective customers, industry professionals, and product distributors.

142.    As a direct result of these false product-specific claims, Plaintiff suffered special damages, including but not limited to lost sales, disruption of distribution channels, and harm to product marketability.

## Demand for Jury Trial

143.    Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff hereby demands a trial by jury on all issues so triable.

## Prayer for Relief

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in it favor and against Defendant, awarding the following relief:

  i.    As to Count I – Copyright Infringement (17 U.S.C. § 501 et seq.):

a. An award of Plaintiff's actual damages and any additional profits of Defendant attributable to the infringement pursuant to 17 U.S.C. § 504(b), or, in the alternative, statutory damages under 17 U.S.C. § 504(c);

b. An award of enhanced statutory damages of up to $150,000 for willful infringement;

c. A permanent injunction prohibiting Defendant from further copying, publishing, or distributing the Proven Video or any derivative thereof;

d. An award of Plaintiff's full costs and reasonable attorneys' fees under 17 U.S.C. § 505.

ii.   As to Count II – Defamation by Implication:

a. An award of general and special damages for loss of reputation, goodwill, and standing in the community resulting from the defamatory implications about its business integrity;

b. An award of punitive damages under Fla. Stat. §768.72 for the Defendant's publication of a video that knowingly or recklessly implied false facts about Plaintiff's business integrity, including through selective editing, calculated omissions, and misleading tone designed to discredit Plaintiff before millions of viewers

c. A permanent injunction prohibiting Defendant from republishing the defamatory content or further implying that Plaintiff engages in dishonest or deceptive business practices.

iii.  As to Count III – False Advertising (15 U.S.C. § 1125(a)):

a. An award of Plaintiff's actual damages and corrective advertising costs;

b. An award of Defendant's profits attributable to the false advertising;

c. Treble damages under 15 U.S.C. § 1117(a) due to willful and deliberate conduct;

d. A permanent injunction prohibiting Defendant from making false or misleading commercial statements regarding Plaintiff's products;

e. An order of specific performance requiring Defendant to publish corrective statements on each platform where the false advertising was distributed — including YouTube, Instagram, TikTok, and Facebook — to clarify that Plaintiff's lock product was not fairly or accurately represented in the McNally Video and to retract any misleading implications about its quality, performance, or security;

f. An award of Plaintiff's attorneys' fees and costs.

iv. As to Count IV – Violation of the Florida Deceptive and Unfair Trade Practices Act (FDUTPA):

a. An award of actual damages under Fla. Stat. § 501.211(2);

b. A permanent injunction enjoining further deceptive acts or practices;

c. An award of attorneys' fees and costs pursuant to Fla. Stat. § 501.2105.

v.   As to Count V – Tortious Interference with Business Relationships:

    a.   An award of damages for disruption of existing and prospective business relationships;

vi.   As to Count VI – Unjust Enrichment:

    a.   An order requiring Defendant to disgorge all financial benefits, revenues, engagement metrics, affiliate traffic, and other gains derived from the unauthorized use and commercial exploitation of Plaintiff's copyrighted content and branding

    b.   Restitution in the amount of unjust benefits retained by Defendant, including social media monetization, increased promotional exposure, and traffic directed to affiliated entities such as Covert Instruments

vii.   As to Count VII – Civil Conspiracy:

    a.   An award of special damages for commercial harm to Plaintiff's product, including lost sales, disruption of distribution channels, and damage to product marketability;

    b.   An award of punitive damages under Fla. Stat. §768.72 to address the willful orchestration and ratification of a coordinated scheme intended to damage Plaintiff's brand through widespread public ridicule, false online reviews, and targeted harassment, and to deter similar conspiratorial conduct designed to weaponize social media audiences against commercial competitors.

viii.   As to Count VIII – Trade Libel:

    a.   An award of special damages, including lost sales, loss of product

marketability, and the cost of corrective messaging;

b. An award of punitive damages under Fla. Stat. §768.72 based on Defendant's malicious and/or reckless publication of misleading content concerning the physical attributes and security functionality of Plaintiff's lock product, made with the intent to discredit Plaintiff's product and divert consumer trust toward competing commercial interests.

ix.  As to All Counts:

a. Pre- and post-judgment interest as permitted by law;

b. Such other and further relief as this Court deems just, equitable, and proper under the circumstances.

*[Remainder of Page Intentionally Left Blank]*

## Verification Statement

I, Ronald J. Lee II, being duly sworn, depose and say:

I am the President of Proven Industries Inc., the Plaintiff in the foregoing Verified Complaint. I have read the foregoing Complaint and, based upon my personal knowledge and/or information provided to me by counsel, believe that the factual allegations contained therein are true and correct to the best of my knowledge, information, and belief.

Executed on this 28 day of April , 2025.

_____
Signature

President _____  Proven Industries Inc.
Title                          Company

State of Florida
County of Hillsborough

Sworn to (or affirmed) and subscribed before me by means of ☑ physical presence or ☐ online notarization this 28th day of April , 2025, by Ronald Lee , who is personally known to me or who has produced FL DL as identification.

Notary Public Rebecca Neal           (SEAL)
My Commission Expires: 12/5/2028

REBECCA NEAL
Notary Public
State of Florida
Comm# HH618905
Expires 12/5/2028

Dated: May 1, 2025                    Respectfully Submitted,


Derek R. Fahey, Esq.
The Plus IP Firm, PLLC
Fla. Bar. No. 88194
101 N.E. 3rd Ave., Suite 1500
Fort Lauderdale, Florida 33301
Telephone: (954) 332-3584
Email: Derek@plusfirm.com
*Attorney for Plaintiff*
*LEAD ATTORNEY TO BE NOTICED*


Austin R. Nowacki, Esq.
The Plus IP Firm, PLLC
Fla. Bar. No. 1016961
101 N.E. 3rd Ave., Suite 1500
Fort Lauderdale, Florida 33301
Telephone: (954) 332-3584
Email: austin@plusfirm.com
*Attorney for Plaintiff*