AO 121 (6/90)

| TO:                                                                                          | REPORT ON THE<br>FILING OR DETERMINATION OF AN<br>ACTION OR APPEAL<br>REGARDING A COPYRIGHT |
|----------------------------------------------------------------------------------------------|---------------------------------------------------------------------------------------------|
| **Register of Copyrights**<br>**Copyright Office**<br>**Library of Congress**<br>**Washington, D.C. 20559** |                                                                                             |

In compliance with the provisions of 17 U.S.C. 508, you are hereby advised that a court action or appeal has been filed on the following copyright(s):

| ☒ ACTION     ☐ APPEAL | COURT NAME AND LOCATION<br>USDC – Middle District of Florida |
|---|---|
| DOCKET NO.<br>**Case 8:25-cv-01119-MSS-LSG** | DATE FILED<br>May 1, 2025 |

| PLAINTIFF<br><br>**Proven Industries, Inc.** | DEFENDANT<br><br>**Trevor McNally** |
|---|---|

| COPYRIGHT<br>REGISTRATION  NO. | TITLE OF WORK | AUTHOR OF WORK |
|---|---|---|
| 1     See attached |  |  |

| CLERK<br><br>ELIZABETH M. WARREN | (BY) DEPUTY CLERK<br><br>MLB | DATE<br><br>May 5, 2025 |
|---|---|---|

**DISTRIBUTION:**

1) Upon initiation of action,
   mail copy to Register of Copyrights

2) Upon filing of document adding copyright(s),
   mail copy to Register of Copyrights

3) Upon termination of action,
   mail copy to Register of Copyrights

4) In the event of an appeal, forward copy to Appellate Court

5) Case File Copy

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

Case No. _____

Proven Industries Inc, a Florida corporation

     *Plaintiff,*

     v.

Trevor McNally, individual

     *Defendant.*

_____/

## **Verified Complaint for Damages and Demand for Jury Trial**

     Plaintiff, Proven Industries Inc (hereinafter, "Proven" and/or "Plaintiff"), by and through their undersigned counsel, hereby file this Complaint against Defendant, Trevor McNally (hereinafter, "McNally" and/or "Defendant"), and alleges the following:

### **Introduction**

1.     This is an action for: (i) copyright infringement under 17 U.S.C. § 501 et seq.; (ii) defamation by implication under Florida law; (iii) false advertising under the Lanham Act, 15 U.S.C. § 1125(a); (iv) violation of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. § 501.201 et seq.; (v) tortious interference with business relationships; (vi) unjust enrichment; (vii) civil conspiracy; and (viii) trade libel under Florida law. Each cause of action is based on a distinct legal theory and seeks separate and non-

duplicative relief arising from different forms of harm caused by Defendant's conduct.

2.    McNally published and widely distributed a misleading and defamatory video purporting to demonstrate a vulnerability in Proven's proprietary lock product. The McNally Video used portions of Proven's copyrighted content without authorization, falsely depicted the product as ineffective, and resulted in reputational harm, lost sales, and increased marketing costs to Proven.

3.    McNally published a video on multiple social media platforms including YouTube, Instagram, TikTok, and Facebook. As of the date of filing, McNally has over 3.5 million, YouTube subscribers, 536,000 Instagram followers, 2.5 million TikTok followers, and 267,000 Facebook followers.

4.    On information and belief, McNally is affiliated with and/or an agent of Covert Instruments (hereinafter "Covert"), a company that sells lock-picking tools. McNally lists Covert's website on his social media pages, and Covert Instruments' website features McNally and benefits from the misleading content McNally produces.

5.    McNally published the video in a manner that intentionally targeted and caused foreseeable harm to Proven Industries in the Middle District of Florida. Although McNally did not film the video in Florida, McNally committed intentional torts—including defamation by implication, copyright infringement, and unfair trade practices—knowing that Proven, a Florida-based company, would suffer reputational and commercial injury in this District.

**Jurisdiction and Venue**

6. This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1338(a) (federal questions: copyright and Lanham Act), and supplemental jurisdiction under 28 U.S.C. § 1367 over the related state-law claims.

7. Personal jurisdiction is proper under Florida long-arm statute, Fla. Stat. § 48.193, because McNally committed intentional torts—including willful copyright infringement, defamation by implication, and deceptive trade practices—that McNally knew or should have known would cause injury in Florida. Although McNally resides in Virginia, McNally directed his conduct toward a Florida-based business with the intent to affect its operations, making his actions purposefully directed toward Florida for jurisdictional purposes.

8. Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the claims occurred here, and the harm was suffered here.

9. Plaintiff has complied with all conditions precedent to the filing of this action. To the extent that Fla. Stat. § 770.01 applies, Plaintiff provided the required notice to Defendant prior to filing suit.

## Parties

10. Plaintiff, Proven Industries Inc, is a Florida corporation with its principal place of business in Florida.

11. Defendant, Trevor McNally is an individual above the age of majority residing in Virginia.

12. Defendant, Trevor McNally maintains an online presence for commercial purposes under the user display name "McNallyofficial".

## Factual Allegations

13.   Plaintiff, Proven Industries, Inc., is the sole author and copyright owner of a video titled "YOU GUYS KEEP SAYING YOU CAN EASILY BREAK OFF OUR LATCH PIN LOCK" (the "Proven Video").

14.   The Proven Video was completed and first published on March 3, 2025.

15.   The Proven Video was uploaded to Plaintiff's official YouTube Shorts account, its Tik Tok account, its Instagram account, and its Facebook account on March 3, 2025.

16.   The Proven Video consists entirely of original audiovisual content created by Plaintiff as a work made for hire and includes original cinematography, visual effects, product demonstration, branding, scripting, and editing.

17.   The Proven Video is registered with the United States Copyright Office under Registration No. PA 2-524-347. A true and correct copy of the Certificate of Registration is attached hereto as **Exhibit** A.

18.   The effective date of registration is April 7, 2025.

19.   Defendant extracted, reproduced, and republished a portion of the Proven Video without authorization.

20.   McNally published the subject video (the "McNally Video") on April 3, 2025.

21.   The McNally Video was uploaded to McNally's YouTube Shorts, TikTok, Instagram, and Facebook accounts.

22.   The video is accessible from devices located within the Middle District of Florida at the following URLs:

   a. YouTube Shorts: https://www.youtube.com/shorts/YjzlmKz_MM8

   b. Instagram: https://www.instagram.com/p/DIAH9vps19y/?hl=en

   c. TikTok: https://www.tiktok.com/@mcnallyofficial/video/7489223700735118622

   d. Facebook: https://www.facebook.com/share/r/1ZicXjkyNb/

23.    The McNally Video incorporates an EXACT copy of excerpts of the Proven Video at its outset and uses it without transformation or commentary, except to frame it for ridicule.

24.    Attached in **Exhibit B** is a composite of still images of the McNally Video – showing that McNally copied EXACT portions of the Proven Video.

25.    Shown directly below is a first representative still image of the McNally Video – showing that McNally made an EXACT copy of excerpts of the Proven Video.



26.    As shown on the page directly above, the McNally Video published by McNally begins with the audio and visual work of the Proven Video.

27.    Shown directly below is a side-by-side comparison that serves as a representative example of how the McNally Video includes an exact reproduction of the Proven Video.




**Proven Video (*left*)**             **McNally Video (*right*)**

28.    As shown directly above, the image on the left is a frame from the original Proven Video published by Plaintiff, and the image on the right is a corresponding frame from the McNally Video published by Defendant. The closed captioning of the audio is the same on both still images – reciting, "today

I'm going to prove". The images are nearly identical in content, showing the same background, subject, gesture, lighting, and attire. The McNally Video replicates the exact moment from the Proven Video, including the same individual, motion, and visual sequence. The juxtaposition of these frames shows that Defendant copied and republished a portion of Plaintiff's original copyrighted video verbatim and without transformation, modification, or commentary.

29.     Approximately two seconds into the McNally Video, the footage shifts to a point-of-view perspective in which Defendant is shown watching the Proven Video on a mobile device. The Proven Video is visibly displayed on the screen, and its original audio is clearly audible within the McNally Video. Shown directly below is a second representative still image of the McNally Video.



30.     The portion of the Proven Video that Defendant copied, as shown on McNally's phone in the still image of the video shown directly above on the preceding page, is used by McNally as a visual and thematic springboard for Defendant's performance, and was not shared via embed, remix, or other platform-native features.

31.     The first approximately sixteen seconds of the McNally Video consist of spliced excerpts taken directly from the Proven Video. These excerpts include both visual and audio elements and were arranged by Defendant without transformation, commentary, or attribution. Although the excerpts are non-continuous, they collectively depict key portions of the Proven Video, including the company's logo, product description, demonstration footage, and an image of a Proven employee.

32.     The McNally Video, with its editing, timing and context, gives consumers the false or at least misleading, impression that shimming Proven's lock is mere "child's play."


*[Remainder of Page Intentionally Left Blank]*

33.     In the McNally Video, McNally appears swinging his legs and sipping from an apple juice box, conveying to the purchasing public that bypassing Plaintiff's lock is simple, trivial, and even comical. Shown directly below is a third representative still image of the McNally Video, showing McNally drinking from, and shaking, a juice box, all while swinging his legs, and displaying the Proven Video on a mobile device. The audio from the Proven Video was not playing out of the mobile device, rather, was extracted from the Proven Video, and played over the McNally Video so that it could be clearly heard by viewers.



34.     The tone, posture, and use of the juice box prop and childish leg swinging that McNally orchestrated in the McNally Video was intentional to diminish the perceived seriousness of Proven Industries as a professional manufacturer

and falsely imply that the company markets products that are unserious, insecure, or not worthy of consumer trust.

35.    The lock-picking sequence is edited to appear as a single, continuous 12-second event. Visual inconsistencies, including changes in the shim's shape, hand positioning, and lighting, indicate the footage was edited or re-shot and spliced to present a simplified narrative.

36.    Shown directly below is a fourth representative still image taken from the McNally Video at approximately the 19–20 second mark, which depicts a first appearance of the shim used by McNally in McNally's lock-picking demonstration.



37.    Shown directly below is a fifth representative still image taken from the McNally Video at approximately the 30 second mark, which depicts a second appearance of the shim used by McNally in McNally's lock-picking demonstration.



38.    A comparison between the first application of the shim and its second appearance in the McNally Video reveals that the cutout or notch in the shim

appears to differ in size between the two shots, suggesting that different shims were used or that the footage was edited between attempts.

39. This visual inconsistency supports the inference that the McNally Video was not filmed in a single, continuous take and was edited to conceal failed or repeated attempts at bypassing the lock.

40. Attached in **Exhibit** C is a composite of additional still images taken from the McNally Video showing discrepancies in the McNally Video which are indicative of misleading editorial practices by McNally.

41. While the shim is briefly visible in the McNally Video, Defendant failed to disclose that successfully bypassing the lock required prior disassembly of the product to examine its internal components, including the position of the plunger, and to manufacture a custom-fit shim with precise notch dimensions.

42. This omitted context misleadingly suggests that the bypass could be performed easily without specialized knowledge, preparation, or internal measurement.

43. Although Defendant makes no verbal statements in the McNally Video, the video communicates materially false and misleading messages through its visual narrative, editing choices, tone, and omissions. Specifically, the McNally Video falsely implies that Plaintiff's lock product can be easily and trivially bypassed by an unskilled person in a matter of seconds using basic tools, without any prior disassembly or technical preparation. The use of juvenile imagery, such as sipping from a juice box while casually applying the shim, reinforces the misleading impression that the lock is inherently insecure and marketed deceptively — all of which is implied without any express claim being

made.

44.    The Infringing Video begins with excerpts from Plaintiff's professionally produced promotional video showing its branded product demonstration, including voiceover descriptions and visuals of the product in use. The video then abruptly shifts to Defendant in a childlike persona, sipping from a juice box and casually applying a shim to the lock. The video omits any reference to preparation, tooling, or disassembly, and presents the lock bypass as effortless and trivial. The overall presentation implies to the average viewer that Plaintiff's product lacks meaningful security and that Plaintiff misrepresents its functionality to the public.

45.    Defendant's reuse of the Proven Video was not authorized by Plaintiff and was not confined to any fair use or statutory exemption.

46.    The portion of the Proven Video copied by Defendant was not used for commentary, criticism, education, or news reporting, but rather for commercial entertainment and mockery.

47.    Defendant's use was not transformative; the excerpt was copied verbatim and used to mischaracterize and target Plaintiff's product, rather than to provide any genuine analysis or new expressive purpose.

48.    The reproduction of Plaintiff's copyrighted material was not necessary to convey any legitimate message, and was instead included to improperly attract attention, ridicule Plaintiff, and frame the lock product as insecure and trivial.

49.    Defendant's use of the Proven Video competed with Plaintiff's original publication on the same social media platforms, diverted traffic and engagement, and impaired the market value and licensing potential of the

original work and advertised product.

50.    On YouTube, Defendant's use exceeded the limited license available to users, which permits only playback or embedding. McNally created a separate, monetized derivative work from Plaintiff's copyrighted content.

51.    On Facebook and Instagram, McNally's reuse of the Proven Video violated Meta's Terms of Use and Community Standards, which prohibit users from uploading copyrighted content without permission. Meta does not grant content licenses between users.

52.    On TikTok, although users may remix content within the platform, McNally did not use TikTok's built-in tools to remix or stitch the Proven Video. Instead, McNally uploaded a pre-produced video ("McNally Video") incorporating Plaintiff's copyrighted content without permission.

53.    McNally warranted to TikTok that McNally owned or had rights to all content in the McNally Video, as required by TikTok's Terms of Service. That warranty was false.

54.    The McNally Video contains no disclaimers, limitations, or clarifications about the video's context, setup, or repeatability under normal conditions.

55.    As of April 17, 2025:

    a.  The McNally Video received over 9.6 million views, 435,000 likes, and 6,262 comments on YouTube Shorts;

    b.  on Instagram, it received over 514,000 likes, 3,190 comments, and 20,000 shares;

    c.  on TikTok, it received over 3.2 million views, 314,900 likes, 1,981 comments, and 17,100 saves; and

     d. on Facebook, it was posted to McNally's account, which has over 267,000 followers.

56. Following publication, Plaintiff received public comments and customer inquiries referencing the McNally Video and expressing concern or doubt about the integrity of Plaintiff's product.

57. On information and belief, Plaintiff lost business opportunities with commercial customers who viewed the McNally Video and opted not to purchase or proceed with intended transactions.

58. Plaintiff incurred reputational damage, customer confusion, and the need for emergency marketing and advertising techniques and procedures to mitigate the harm caused by the McNally Video.

59. McNally monetizes his content across platforms and links to Covert Instruments—a company that sells lock-picking tools—across his social media profiles.

60. On information and belief, McNally receives compensation or other commercial benefits from his publication of the McNally Video.

61. On information and belief, McNally receives compensation or other commercial benefits from his affiliation with Covert Instruments.

62. On information and belief, McNally coordinated with individuals at or affiliated with Covert Instruments to produce and publish the McNally Video.

63. Following publication of the McNally Video, McNally's followers began engaging in a coordinated pattern of online harassment targeting Plaintiff.

64. Numerous of McNally's followers have commented on Plaintiff's social media posts with disparaging, threatening, or mocking language, often echoing

the themes, imagery, and misleading implications conveyed by the McNally Video, as illustrated by representative examples attached hereto as **Exhibit D**.

65.   Plaintiff's customer service channels received abusive or misleading messages from individuals who identified themselves as viewers of the McNally Video. Exhibit D.

66.   Numerous false or negative online reviews and comments referencing McNally's video appeared across platforms shortly after its publication, suggesting a coordinated response from McNally's audience. Exhibit D.

67.   On information and belief, McNally knew or should have known that publishing the McNally Video to his audience of millions would incite a wave of targeted hostility toward Plaintiff located in the Middle District of Florida.

68.   McNally's substantial social media reach—over 3.5 million YouTube subscribers, 2.5 million TikTok followers, 536,000 Instagram followers, and 267,000 Facebook followers—amplified the harm and enabled large-scale reputational injury.

69.   The conduct of McNally's followers, acting in concert and with knowledge of the McNally Video's purpose, contributed directly to the harm suffered by Plaintiff and was foreseeable, encouraged, and ratified by McNally's platform and silence.

70.   The timing, content, and branding of the McNally Video reflect a common plan to disparage Plaintiff and promote Covert Instruments' affiliated products and services.

71.   McNally's conduct was part of a broader scheme to harm Plaintiff's

business reputation and drive consumer attention to alternative products or services affiliated with him.

72.    McNally acted with actual malice or with reckless disregard for the truth by knowingly presenting a misleading demonstration and suppressing key context.

73.    McNally failed to exercise reasonable care or competence in assessing and representing Plaintiff's product, despite presenting himself as an expert.

74.    McNally's use of the Proven Video was not incidental, transformative, or justified—it was commercial, deliberate, and intended to attract viewership and revenue by disparaging Plaintiff's product.

75.    McNally unjustly retained commercial benefits from this conduct, including increased engagement, monetization, promotional clicks, and affiliate traffic.

76.    Defendant's conduct was not a one-time error in judgment, but rather a calculated effort to ridicule Plaintiff's product and brand before a massive online audience, knowing that doing so would spark reputational harm and commercial loss.

77.    Defendant published the McNally Video with actual knowledge that its visual editing, omissions, and mock tone would lead viewers to believe that Plaintiff's lock product was ineffective and deceptively marketed — despite Defendant knowing that bypassing the lock required specialized preparation and manipulation not disclosed to the viewer.

78.    Defendant acted with deliberate indifference to the truth, including by failing to disclose that the lock was disassembled and studied in advance, that

a custom shim was designed to defeat it, and that the lock's bypass was staged and edited for effect.

79.    Rather than publish fair commentary or criticism, Defendant selected and copied branded portions of Plaintiff's copyrighted video, stripped of context, and presented them with mocking theatrics and edited staging — for the deliberate purpose of humiliating Plaintiff and falsely implying its product is insecure.

80.    Defendant is a self-described lock expert with over 3.5 million YouTube subscribers and commercial ties to Covert Instruments — a company that markets lock picking tools. Defendant was fully aware of the weight his endorsement or criticism carries and exploited that authority to discredit Plaintiff's product for financial gain.

81.    Defendant failed to issue any clarification, disclaimer, or correction despite knowing that his followers were using the McNally Video to launch disparaging, harassing, and defamatory attacks on Plaintiff through coordinated online messaging, including threats, false reviews, and customer service abuse.

82.    On information and belief, Defendant collaborated with individuals affiliated with Covert Instruments in developing, editing, and disseminating the McNally Video, in furtherance of a commercial scheme to divert attention from Plaintiff's product to competing tools or services.

83.    Defendant monetized the McNally Video, promoted affiliated commercial links alongside it, and knowingly submitted false licensing representations to social media platforms to obtain algorithmic amplification

and increased monetization — despite knowing that he lacked rights to Plaintiff's copyrighted content.

**Count I**
**Copyright Infringement**
**17 U.S.C. §501 et seq.**

84. Plaintiff repeats and realleges paragraphs 1 through 83 as if fully set forth herein.

85. This count arises from Defendant's unauthorized reproduction and public display of protected audiovisual content owned by Plaintiff, and seeks statutory or actual damages, along with injunctive relief under the Copyright Act

86. Plaintiff owns a valid and registered copyright in the Proven Video.

87. Defendant copied, reproduced, publicly displayed, and distributed substantial portions of the Proven Video without authorization, including on YouTube, TikTok, Instagram, and Facebook.

88. Defendant's conduct was not authorized by license, not excused by fair use, and was done for commercial purposes.

89. Defendant acted willfully and in reckless disregard of Plaintiff's exclusive rights.

90. Defendant's infringement was willful because McNally knowingly uploaded Plaintiff's copyrighted content to social media platforms including but not limited to YouTube, Instagram, and Facebook, under the guise that McNally either owned the content or had permission to distribute it — a prerequisite under each platform's Terms of Service.

91. Defendant's false certifications enabled him to gain preferential

algorithmic exposure, monetization, and viral reach using Plaintiff's content, further demonstrating the commercial motive and knowing violation of Plaintiff's rights.

92.   As a direct result of the infringement, Plaintiff suffered damages including, but not limited to, loss of control over its intellectual property, lost licensing opportunities, reputational harm, and diminution in the value of the copyrighted work.

## Count II
## Defamation by Implication

93.   Plaintiff repeats and realleges paragraphs 1 through 83 as if fully set forth herein.

94.   This count arises from Defendant's publication of the McNally Video, which, through tone, editing, omission, and visual presentation, falsely implied to viewers that Plaintiff's business was dishonest or incompetent and that Plaintiff's lock product was inherently untrustworthy.

95.   Although the McNally Video did not explicitly state that Plaintiff committed fraud or sold a defective product, Defendant juxtaposed facts and edited content in a way that conveyed a defamatory implication — namely, that Plaintiff markets a security device that is ineffective, deceptively advertised, and easy to defeat by even an unskilled user.

96.   Defendant's McNally Video downplays the difficulty of shimming Proven's lock by making it seem as if shimming the lock is mere "child's play" by having the actor sip apple juice from an apple juice box and swing his legs in in a childlike manner – all while the actor watches Proven Video on a mobile device, which was specifically designed to ridicule Plaintiff and to suggest that

its product is so flawed that it poses no real security barrier.

97.   These implications were materially misleading and false, and they were conveyed to millions of viewers across multiple platforms including YouTube, TikTok, Instagram, and Facebook.

98.   Defendant acted with actual malice or reckless disregard for the truth by presenting the product demonstration out of context, omitting necessary disclosures (such as the use of a custom shim, manipulation time, or setup), and selectively editing the footage to mislead viewers about the real-world difficulty of compromising the product.

99.   Viewers understood the McNally Video to imply that Plaintiff's product — and by extension, Plaintiff's company — was disreputable or fraudulent. The implications extended beyond the product itself to cast doubt on Plaintiff's honesty, competence, and value as a manufacturer.

100.   As a direct and proximate result of these defamatory implications, Plaintiff and Plaintiff's product's reputation suffered reputational injury, public ridicule, diminished trust within the customer base, and measurable economic harm in the form of lost goodwill, canceled transactions, and the need for emergency marketing expenditures.

### Count III
### False Advertising
### 15 U.S.C. §1125(a)

101.   Plaintiff repeats and realleges paragraphs 1 through 83 as if fully set forth herein.

102.   This count arises from the Defendant's materially false or misleading statements made in commercial promotion that misled consumers and diverted

business from Plaintiff.

103. These misrepresentations were made in commercial promotion and are likely to influence consumer purchasing decisions.

104. Defendant's false claims about the ease of bypassing the lock were material and deceptive.

105. Defendant's false representations were made in connection with the commercial promotion of alternative products or services affiliated with Defendant and/or Covert Instruments, and therefore directly harmed Plaintiff's commercial interests and consumer perception in the marketplace.

106. Plaintiff suffered actual harm to its business, reputation, and goodwill.

107. As a result, Plaintiff suffered actual harm including lost sales, reduced consumer confidence, market confusion, and increased costs to counteract false perceptions of its product.

**Count IV**
**Violation of FDUTPA**
**<u>Fla. Stat. §501.201</u> et seq.**

108. Plaintiff repeats and realleges paragraphs 1 through 83 as if fully set forth herein.

109. This count arises because the Defendant engaged in deceptive and unfair practices in the course of trade and commerce by publishing misleading and materially false representations that affected Plaintiff's business operations and Florida consumers.

110. Such deceptive acts included: (a) using Plaintiff's copyrighted content without authorization, (b) editing or presenting the content to imply product failure, and (c) omitting context regarding custom tools and manipulation time

necessary to perform the bypass shown.

111.   Defendant's conduct was likely to mislead reasonable consumers and had the capacity to deceive the public into believing that Plaintiff's product was defective, insecure or easily shimmed, when in fact it was not.

112.   Defendant's actions were not merely opinion or puffery but constituted factual misrepresentations relating to the quality, functionality, and performance of a consumer product.

113.   As a direct and proximate result of Defendant's deceptive and unfair practices, Plaintiff suffered actual damages, including lost customer relationships, diminished consumer trust, and the need for corrective advertising and public relations expenditures.

**Count V**
**Tortious Interference with**
**Prospective Business Relationships**

114.   Plaintiff repeats and realleges paragraphs 1 through 83 as if fully set forth herein.

115.   This count arises from Defendant's intentional disruption of Plaintiff's business relationships and prospective contracts.

116.   Plaintiff had valid business relationships with existing and prospective customers, including trailer manufacturers, distributors, and end-users.

117.   Defendant knew of these relationships or reasonably should have known of them.

118.   Defendant intentionally and unjustifiably interfered with these relationships by publishing false, disparaging, and misleading content.

119.   Defendant's conduct, including the publication of the McNally Video and

the resulting coordinated activity by his followers, interfered not only with Plaintiff's customer relationships but also with Plaintiff's advertising efforts and marketing channels, causing reduced ad engagement, increased negative responses to paid placements, and the need for unplanned emergency media spend.

120.   Plaintiff lost business and revenue as a result of such interference, including canceled commercial transactions, terminated sales leads, and interruption of planned advertising strategy.

### Count VI
### Unjust Enrichment

121.   Plaintiff repeats and realleges paragraphs 1 through 83 as if fully set forth herein.

122.   This count arises from Defendant's unauthorized use and monetization of Plaintiff's content and seeks equitable relief therefor.

123.   Defendant misappropriated Plaintiff's copyrighted content and used it to generate engagement, revenue, and traffic to his own platforms and affiliate entities.

124.   Defendant's enrichment was not limited to monetization or exposure; it was also derived by falsely warranting to social media platforms that McNally had the rights to use Plaintiff's copyrighted content, thereby bypassing platform restrictions and gaining algorithmic distribution and user trust that would otherwise have been denied.

125.   Defendant's conduct violated the spirit and letter of the limited user licenses granted under YouTube, TikTok, and Meta's Terms of Service, resulting in additional inequitable benefit.

126.   Defendant retained a benefit to which McNally was not entitled, and it would be inequitable for Defendant to retain that benefit without compensation to Plaintiff.

127.   As a result, Plaintiff was deprived of control over its copyrighted work, licensing revenue, and competitive market position.

**Count VII**
**Civil Conspiracy**

128.   Plaintiff repeats and realleges paragraphs 1 through 83 as if fully set forth herein.

129.   This count arises from a coordinated and intentional effort by Defendant, acting in concert with third parties, including Covert Instruments and others, to cause reputational and commercial harm to Plaintiff through the production, distribution, and amplification of the McNally Video and the resulting wave of disparagement.

130.   On information and belief, Defendant entered into an agreement or common plan with one or more individuals affiliated with Covert Instruments to publish a misleading and harmful McNally Video targeting Plaintiff's lock product, with the shared purpose of damaging Plaintiff's reputation and market share while promoting Covert's lock-picking tools and related products.

131.   The McNally Video prominently featured branding, language, and promotional elements tied to Covert Instruments, including outbound links to Covert's website in the social media bios affiliated with McNally. Covert Instruments' website likewise featured Defendant and benefited from the publication.

132.   Following publication of the McNally Video, Defendant's large online

following engaged in coordinated online conduct that included mass commenting on Plaintiff's social media, spreading mocking and threatening language, posting negative reviews, and submitting disruptive communications to Plaintiff's customer service channels.

133.   This conduct was foreseeable and encouraged by the tone, messaging, and platform reach of Defendant's McNally Video. Defendant and Covert Instruments ratified and benefited from the campaign without disavowing or attempting to mitigate the resulting harm to Plaintiff.

134.   The conspiracy's objective was to inflict reputational injury, interfere with Plaintiff's business relationships, and suppress commercial demand for Plaintiff's products in favor of alternatives promoted by Covert Instruments and affiliated with Defendant.

135.   As a direct and proximate result of the conspiracy and resulting acts in furtherance of it, Plaintiff suffered reputational harm, loss of sales, cancellation of prospective customer relationships, and increased expenditures to restore brand integrity and public trust.

## Count VIII
## Trade Libel

136.   Plaintiff repeats and realleges paragraphs 1 through 83 as if fully set forth herein.

137.   This count arises from false and disparaging statements published by Defendant concerning the quality, functionality, and performance of Plaintiff's physical product — namely, its proprietary trailer lock — as opposed to Plaintiff's brand or reputation.

138.   Defendant published and widely disseminated the McNally Video to

26

third parties that portrayed Plaintiff's lock as defective and easily bypassed. The presentation mischaracterized the product's security features and falsely suggested that it could be compromised in seconds using basic tools.

139. These statements and implications were made with malice or with reckless disregard for the truth and without due diligence or technical accuracy. Defendant omitted critical context, including the use of specialized tools, rehearsal time, or manipulated conditions that would not be present in real-world use.

140. The statements were materially false and concerned the product's physical attributes, mechanical performance, and suitability for its advertised use — all of which are provable and verifiable facts.

141. Defendant made these statements publicly, and they were viewed by millions of consumers, including prospective customers, industry professionals, and product distributors.

142. As a direct result of these false product-specific claims, Plaintiff suffered special damages, including but not limited to lost sales, disruption of distribution channels, and harm to product marketability.

## Demand for Jury Trial

143. Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff hereby demands a trial by jury on all issues so triable.

## Prayer for Relief

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in it favor and against Defendant, awarding the following relief:

i.   As to Count I – Copyright Infringement (17 U.S.C. § 501 et seq.):

     a. An award of Plaintiff's actual damages and any additional profits of Defendant attributable to the infringement pursuant to 17 U.S.C. § 504(b), or, in the alternative, statutory damages under 17 U.S.C. § 504(c);

     b. An award of enhanced statutory damages of up to $150,000 for willful infringement;

     c. A permanent injunction prohibiting Defendant from further copying, publishing, or distributing the Proven Video or any derivative thereof;

     d. An award of Plaintiff's full costs and reasonable attorneys' fees under 17 U.S.C. § 505.

ii.   As to Count II – Defamation by Implication:

     a. An award of general and special damages for loss of reputation, goodwill, and standing in the community resulting from the defamatory implications about its business integrity;

     b. An award of punitive damages under Fla. Stat. §768.72 for the Defendant's publication of a video that knowingly or recklessly implied false facts about Plaintiff's business integrity, including through selective editing, calculated omissions, and misleading tone designed to discredit Plaintiff before millions of viewers

     c. A permanent injunction prohibiting Defendant from republishing the defamatory content or further implying that Plaintiff engages in dishonest or deceptive business practices.

iii.  As to Count III – False Advertising (15 U.S.C. § 1125(a)):

    a. An award of Plaintiff's actual damages and corrective advertising costs;

    b. An award of Defendant's profits attributable to the false advertising;

    c. Treble damages under 15 U.S.C. § 1117(a) due to willful and deliberate conduct;

    d. A permanent injunction prohibiting Defendant from making false or misleading commercial statements regarding Plaintiff's products;

    e. An order of specific performance requiring Defendant to publish corrective statements on each platform where the false advertising was distributed — including YouTube, Instagram, TikTok, and Facebook — to clarify that Plaintiff's lock product was not fairly or accurately represented in the McNally Video and to retract any misleading implications about its quality, performance, or security;

    f. An award of Plaintiff's attorneys' fees and costs.

iv. As to Count IV – Violation of the Florida Deceptive and Unfair Trade Practices Act (FDUTPA):

    a. An award of actual damages under Fla. Stat. § 501.211(2);

    b. A permanent injunction enjoining further deceptive acts or practices;

    c. An award of attorneys' fees and costs pursuant to Fla. Stat. § 501.2105.

    v.   As to Count V – Tortious Interference with Business Relationships:

        a. An award of damages for disruption of existing and prospective business relationships;

    vi.   As to Count VI – Unjust Enrichment:

        a. An order requiring Defendant to disgorge all financial benefits, revenues, engagement metrics, affiliate traffic, and other gains derived from the unauthorized use and commercial exploitation of Plaintiff's copyrighted content and branding

        b. Restitution in the amount of unjust benefits retained by Defendant, including social media monetization, increased promotional exposure, and traffic directed to affiliated entities such as Covert Instruments

    vii.   As to Count VII – Civil Conspiracy:

        a. An award of special damages for commercial harm to Plaintiff's product, including lost sales, disruption of distribution channels, and damage to product marketability;

        b. An award of punitive damages under Fla. Stat. §768.72 to address the willful orchestration and ratification of a coordinated scheme intended to damage Plaintiff's brand through widespread public ridicule, false online reviews, and targeted harassment, and to deter similar conspiratorial conduct designed to weaponize social media audiences against commercial competitors.

    viii.   As to Count VIII – Trade Libel:

        a. An award of special damages, including lost sales, loss of product

marketability, and the cost of corrective messaging;

b. An award of punitive damages under Fla. Stat. §768.72 based on Defendant's malicious and/or reckless publication of misleading content concerning the physical attributes and security functionality of Plaintiff's lock product, made with the intent to discredit Plaintiff's product and divert consumer trust toward competing commercial interests.

ix.   As to All Counts:

a. Pre- and post-judgment interest as permitted by law;

b. Such other and further relief as this Court deems just, equitable, and proper under the circumstances.

*[Remainder of Page Intentionally Left Blank]*

## Verification Statement

I, Ronald J. Lee II, being duly sworn, depose and say:

I am the President of Proven Industries Inc., the Plaintiff in the foregoing Verified Complaint. I have read the foregoing Complaint and, based upon my personal knowledge and/or information provided to me by counsel, believe that the factual allegations contained therein are true and correct to the best of my knowledge, information, and belief.

Executed on this 28 day of April , 2025.

_____
*Signature*

President                                    Proven Industries Inc.
*Title*                                        *Company*

State of Florida
County of Hillsborough

Sworn to (or affirmed) and subscribed before me by means of ☑ physical presence or ☐ online notarization this 28th day of April , 2025, by Ronald Lee , who is personally known to me or who has produced FL DL as identification.

Notary Public Rebecca Neal                        (SEAL)
My Commission Expires: 12/5/2028

REBECCA NEAL
Notary Public
State of Florida
Comm# HH618905
Expires 12/5/2028

Dated: May 1, 2025                    Respectfully Submitted,


_____
Derek R. Fahey, Esq.
The Plus IP Firm, PLLC
Fla. Bar. No. 88194
101 N.E. 3rd Ave., Suite 1500
Fort Lauderdale, Florida 33301
Telephone: (954) 332-3584
Email: Derek@plusfirm.com
*Attorney for Plaintiff*
*LEAD ATTORNEY TO BE NOTICED*


_____
Austin R. Nowacki, Esq.
The Plus IP Firm, PLLC
Fla. Bar. No. 1016961
101 N.E. 3rd Ave., Suite 1500
Fort Lauderdale, Florida 33301
Telephone: (954) 332-3584
Email: austin@plusfirm.com
*Attorney for Plaintiff*

# EXHIBIT A

|                              |                    |
|-----------------------------:|:-------------------|
| **Name:**                    | Derek Fahey        |
| **Date:**                    | April 07, 2025     |
| **Applicant's Tracking Number:** | PROVEN-I-CA-001 |

---

|                      |     |
|---------------------:|:----|
| **Correspondence:**  | Yes |

# Certificate of Registration



This Certificate issued under the seal of the Copyright Office in accordance with title 17, *United States Code*, attests that registration has been made for the work identified below. The information on this certificate has been made a part of the Copyright Office records.

*Shira Perlmutter*

United States Register of Copyrights and Director

**Registration Number**

## PA 2-524-347

**Effective Date of Registration:**
April 07, 2025
**Registration Decision Date:**
April 08, 2025

---

## Title

**Title of Work:** YOU GUYS KEEP SAYING YOU CAN EASILY BREAK OFF OUR LATCH PIN LOCK

## Completion/Publication

**Year of Completion:** 2025
**Date of 1st Publication:** March 03, 2025
**Nation of 1st Publication:** United States

## Author

- **Author:** Proven Industries, Inc.
  **Author Created:** Entire Video
  **Work made for hire:** Yes
  **Citizen of:** United States

## Copyright Claimant

**Copyright Claimant:** Proven Industries, Inc.
2310 South Dock Street, #111, Palmetto, FL, 34221

## Rights and Permissions

**Organization Name:** Proven Industries Inc.
**Email:** rlee@provenlocks.com
**Telephone:** (813)816-1975
**Address:** 2310 South Dock Street
#111
Palmetto, FL 34221 United States

## Certification



Registration #:     PA0002524347
Service Request #:  1-14902080221

The Plus IP Firm
Derek Fahey
101 NE 3rd Ave.
Suite 1500
Fort Lauderdale, FL 33301

# EXHIBIT B

# YOUTUBE VIDEO

*https://www.youtube.com/shorts/YjzlmKz_MM8*



Time: 0:01



Time: 0:02



Time: 0:03



Time: 0:04



Time: 0:05



Time: 0:06



Time: 0:07



Time: 0:08



Time: 0:09



Time: 0:10



Time: 0:11



Time: 0:12



Time: 0:13



Time: 0:14



# INSTAGRAM VIDEO

*https://www.instagram.com/p/DIAH9vps19y/?hl=en*





# FACEBOOK VIDEO
*https://www.facebook.com/McNallyOfficial1/*





# TIKTOK VIDEO

*https://www.tiktok.com/@mcnallyofficial/video/7489223700735118622?lang=en*



# EXHIBIT C

0:19.699



0:25.832 - No Blue Spot



0:28.132 - Blue Spot Very Visible



0:28.532



0:28.649



0:29.199



0:29.216



0:29.282



0:30.299



0:30.582



0:30.649





0:31.882



0:30.949 - Blue Spot Disappearing



0:30.966 - Blue Spot Gone





# EXHIBIT D

# INSTAGRAM:

**caydenmoose_** 6d
Yeah I'm not buying this, McNally easily unlocked your locks so I'm just gonna buy a master lock or something.

Reply    Hide

♡ 419

View 3 previous replies

**blenderfucker_** 6d
Who would want to waste money on your locks?

Reply    Hide

♡ 55

**callsign.kilo** Weren't this picked with a soda can and yall had no response?

3d   26 likes

♡

**cypher_rides** Branding is everything and you cooked it. Say FairPlay and move on, always new strategies. Maybe collab with the guy??

3w   160 likes   Reply

♡

**ivaldifreyrxiv** Security? Your "security" can be beaten by Mountain Dew.

3w   460 likes   Reply

♡

View replies (5)

**thefatbradpitt** How is it going to get personal for him exactly?

3w   162 likes   Reply

♡

View replies (31)

**pseudojo** How can you take pride as engineers when you design dogshit stuff

3w   501 likes   Reply

♡

**amelieee1_h** "Protecting your investment" but the lock can be opened with a drinks can ffs!

3w   770 likes   Reply

♡



**abdeufga** "It's going to get really personal for him soon" lmao what you gonna do ? lock him up with your crappy locks just like you keep your comments section locked

3w   385 likes   Reply

**devon__straw** If you cared about feedback you'd redesign the lock

3w   293 likes   Reply

⎯⎯ View replies (6)

**1_adis_3** So you also delete the video you made lmaoooo 😂😂

3w   180 likes   Reply

⎯⎯ View replies (3)

**wafaam5** The only difference between you and titanic is you ain't big yet

3w   166 likes   Reply

⎯⎯ View replies (7)

**enzo.lanoizelee** Just like @mcnallyofficial potentially opened your lock ?

3w   138 likes   Reply

**marin_susic** Damn that mcnally comment really backfired huh 😂

2w   25 likes   Reply

**notreallyawwen** can this be opened with a beer can too or nah?

3w   110 likes   Reply

**diddy_disciple_46029** You said something about McNally and him only opening cheap locks right?

3w   24 likes   Reply

**chris_vaccari91** How'd talkin shit work out for y'all 😂😂😂😂

3w   59 likes   Reply

**kevharlow**



3w   251 likes   Reply

—— View replies (1)

**detoastyone** @kevharlow came here for these 😂
3w   4 likes   Reply

**909chevelle** ✔ @detoastyone I'm thirsty 👌
3w   Reply

**detoastyone** @909chevelle lost your key didn't cha? 😂
3w   Reply

**kobyylane** One can and it's over for you
2d   1 like   Reply

**gorp6224** Opend with an empty can
2w   12 likes   Reply

**bumahfaggiot** Every lock has an easy bypass, but only u guys have thrown a fit when proven wrong
2d   Reply

**easypoachin** Still a shit lock. 😂
3w   38 likes   Reply

**rouseytt** @mcnallyofficial
3w   58 likes   Reply   •••

**TIKTOK:**

**Mintjam**
Proven to be garbage
4-18    ♡ 46    Reply

**Marco**
Why are you doing this, whilst you know that people will crack crappy locks within 30 seconds
4-18    ♡ 3    Reply

**p0larizing**
He's gonna unlock that one too
4-15    ♡ 33    Reply

**Phillip Tran**
Proven to be unlockable
4-15    ♡ 16    Reply

**AIC**
He's deleting everything 📸
4-14    Reply
♡
70

**supernoodle**
went from 20 to 1 Comments when I clicked 🤣
4-15    Reply
♡
11

**Cpt-Logy**
wasn't it unlocked in 10 seconds by the same drink you just took a sip out of?
4-15    Reply
♡
54

**yolandiofficial**
that's the joke.
3d ago    Reply
♡
0

**Andrew C**
This is the one that has an easy bypass right?
4-4    Reply
♡
63

## AMAZON – PRODUCT LISTING COMMENTS:

 Kyle lynch

★☆☆☆☆ **Damn kids and their soda cans!**

Reviewed in the United States on April 5, 2025

Bought this lock to protect my trailer but those damn kids and their soda cans stole my trailer anyways.

11 people found this helpful

[ Helpful ]   |   Report

Missing the first volume, 0/10.

★☆☆☆☆ **NOT SECURE AT ALL**

Reviewed in the United States on April 5, 2025

CAN BE PICKED EASILY WITH A CUT UP SODA CAN! DO NOT BUY!

4 people found this helpful

[ Helpful ]   |   Report

Evan Moody

★☆☆☆☆ **Garbage Lock - BUYER BEWARE!**

Reviewed in the United States on April 17, 2025

Color: Blue

Can be opened with a soda can, and this company likes to message people families threatening them.

[ Helpful ]   |   Report

**PROVEN'S YOUTUBE VIDEOS:**
*https://www.youtube.com/shorts/dbMmc-diolc*

**@neruz5** 2 days ago
Threatening through his wife, not the person directly smh

👍 4  👎    **Reply**

**@jasoncross6373** 2 days ago
Says there's 49 comments but I see just 4, guess they're on a deleting spree, must be people pointing out how easy this one is to shim open with a soda can. Instead of deleting, how about you improve the design...
Read more

👍 1  👎    **Reply**

**@anyholeismygoall853** 2 weeks ago
Pathetic clowns imagine trying to scam customers with a shitty lock then threatening the guy doing everyone a favor by calling you out for your bullshit. losers hopefully your company goes belly up lol. ...
Read more

👍 1  👎    **Reply**

**@OkamiRex** 2 weeks ago
Hey. instead of threatening an innocent person to "be prepared"-- how about taking McNally's vid to heart and make a product you can't break into with a fucking shredded aluminum can.

👍 2  👎    **Reply**

**@originalhayze2698** 2 weeks ago
Bro done hit up a mans wife, what a scumbag lmao with his dumpster fire of a junk lock lmao

👍  👎    **Reply**



@leviolson3977 2 weeks ago
Real mature to contact the guys wife. Clearly your product is made from shit and it appears you are too.

Reply

@AppalachianKentucky 2 weeks ago
Step one: sell a garbage product
Step two: call out a beloved industry icon
step three: lose to a fucking aluminum can
Step four: threaten someone's wife...

Read more

Reply

@KallunoLeaf 2 weeks ago
Threatening a man's wife for proving you wrong? Hope you never meet me in real life.

Reply

@SkirnirK 2 weeks ago (edited)
"How to stop people who pick your 'unpickable lock' with a EMPTY CAN..";
- Threaten them with DMCA takedowns
- Threaten their wife...

Read more

Reply

@DemonicEmpowerment 2 weeks ago
Why is this embarrassing shit still up. Picked my a shredded soda can.

Reply



**@hisaffliction8thms** 2 weeks ago

Would be aome sad saxk to get butt hurt and threaten someone for doing R n D for free. Do better dingle berry

👍 👎 Reply

**@-VOR** 2 weeks ago

"haters"? Because we told you the truth? Grow tf up. Lol looks like you ate crow with that dip 💩 comment HATING on McNally huh? 😂 imbecile

👍 👎 Reply

**@Tullminator** 2 weeks ago

Lol beat by a soda can. This guy is a chode. Then he calls and threatens his wife. What a bi+<h

👍 👎 Reply

**@xLxUxSxTx** 2 weeks ago (edited)

I'm not coming here to troll you about how your lock has been proven to be opened by the most basic of locking picking skills that we learned in middle school. I'm not here to sell aluminum cans...

Read more

👍 3 👎 Reply

**@Khlaid77** 3 weeks ago

Provenlocks. You need to improve it more. Someone already unlock it using a TinCan

👍 👎 Reply

**@nohunger3206** 3 weeks ago

My oh my, how are you fellas faring after that @McNallyOfficial Aluminum Can debunk? 💀 Don't go making fraudulent products now..

👍 👎 Reply

## MCNALLY'S YOUTUBE POST:

*https://www.youtube.com/shorts/YjzlmKz_MM8*







# DIRECT MESSAGES FROM CONSUMERS:













# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

Proven Industries, Inc.

**DEFENDANTS**

McNally, Trevor

**(b)** County of Residence of First Listed Plaintiff _____
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant   Spotsylvania County
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

The Plus IP Firm: 101 NE 3rd Avenue, Ste. 1500, Fort Lauderdale, FL 33301; 954-332-3584

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [ ] 1   U.S. Government Plaintiff
- [x] 3   Federal Question *(U.S. Government Not a Party)*
- [ ] 2   U.S. Government Defendant
- [ ] 4   Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated *or* Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated *and* Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| [ ] 110 Insurance | **PERSONAL INJURY**    **PERSONAL INJURY** | [ ] 625 Drug Related Seizure of Property 21 USC 881 | [ ] 422 Appeal 28 USC 158 | [ ] 375 False Claims Act |
| [ ] 120 Marine | [ ] 310 Airplane    [ ] 365 Personal Injury - Product Liability | [ ] 690 Other | [ ] 423 Withdrawal 28 USC 157 | [ ] 376 Qui Tam (31 USC 3729(a)) |
| [ ] 130 Miller Act | [ ] 315 Airplane Product Liability    [ ] 367 Health Care/ | | | [ ] 400 State Reapportionment |
| [ ] 140 Negotiable Instrument | [ ] 320 Assault, Libel & Pharmaceutical | | **INTELLECTUAL PROPERTY RIGHTS** | [ ] 410 Antitrust |
| [ ] 150 Recovery of Overpayment & Enforcement of Judgment |    Slander    Personal Injury | | [x] 820 Copyrights | [ ] 430 Banks and Banking |
| [ ] 151 Medicare Act | [ ] 330 Federal Employers'    Product Liability | | [ ] 830 Patent | [ ] 450 Commerce |
| [ ] 152 Recovery of Defaulted Student Loans (Excludes Veterans) |    Liability    [ ] 368 Asbestos Personal Injury Product | | [ ] 835 Patent - Abbreviated New Drug Application | [ ] 460 Deportation |
| | [ ] 340 Marine    Liability | | [ ] 840 Trademark | [ ] 470 Racketeer Influenced and Corrupt Organizations |
| [ ] 153 Recovery of Overpayment of Veteran's Benefits | [ ] 345 Marine Product Liability    **PERSONAL PROPERTY** | **LABOR** | [ ] 880 Defend Trade Secrets Act of 2016 | [ ] 480 Consumer Credit (15 USC 1681 or 1692) |
| [ ] 160 Stockholders' Suits | [ ] 350 Motor Vehicle    [ ] 370 Other Fraud | [ ] 710 Fair Labor Standards Act | | [ ] 485 Telephone Consumer Protection Act |
| [ ] 190 Other Contract | [ ] 355 Motor Vehicle Product Liability    [ ] 371 Truth in Lending | [ ] 720 Labor/Management Relations | **SOCIAL SECURITY** | [ ] 490 Cable/Sat TV |
| [ ] 195 Contract Product Liability | [ ] 360 Other Personal    [ ] 380 Other Personal Property Damage | [ ] 740 Railway Labor Act | [ ] 861 HIA (1395ff) | [ ] 850 Securities/Commodities/ Exchange |
| [ ] 196 Franchise |    Injury    [ ] 385 Property Damage Product Liability | [ ] 751 Family and Medical Leave Act | [ ] 862 Black Lung (923) | [ ] 890 Other Statutory Actions |
| | [ ] 362 Personal Injury - Medical Malpractice | [ ] 790 Other Labor Litigation | [ ] 863 DIWC/DIWW (405(g)) | [ ] 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS**    **PRISONER PETITIONS** | [ ] 791 Employee Retirement Income Security Act | [ ] 864 SSID Title XVI | [ ] 893 Environmental Matters |
| [ ] 210 Land Condemnation | [ ] 440 Other Civil Rights    **Habeas Corpus:** | | [ ] 865 RSI (405(g)) | [ ] 895 Freedom of Information Act |
| [ ] 220 Foreclosure | [ ] 441 Voting    [ ] 463 Alien Detainee | | | [ ] 896 Arbitration |
| [ ] 230 Rent Lease & Ejectment | [ ] 442 Employment    [ ] 510 Motions to Vacate Sentence | | **FEDERAL TAX SUITS** | [ ] 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| [ ] 240 Torts to Land | [ ] 443 Housing/ Accommodations    [ ] 530 General | | [ ] 870 Taxes (U.S. Plaintiff or Defendant) | |
| [ ] 245 Tort Product Liability | [ ] 445 Amer. w/Disabilities - Employment    [ ] 535 Death Penalty | **IMMIGRATION** | [ ] 871 IRS—Third Party 26 USC 7609 | [ ] 950 Constitutionality of State Statutes |
| [ ] 290 All Other Real Property | [ ] 446 Amer. w/Disabilities - Other    **Other:** | [ ] 462 Naturalization Application | | |
| | [ ] 448 Education    [ ] 540 Mandamus & Other | [ ] 465 Other Immigration Actions | | |
| | [ ] 550 Civil Rights | | | |
| | [ ] 555 Prison Condition | | | |
| | [ ] 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- [x] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
17 USC 501; 15 USC 1125

Brief description of cause:
Copyright Infringement 17 usc 501; False Advertising 15 usc 1125; Defamation

## VII. REQUESTED IN COMPLAINT:

- [ ] CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

DEMAND $ _____

CHECK YES only if demanded in complaint:
JURY DEMAND:   [x] Yes   [ ] No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*   JUDGE _____   DOCKET NUMBER _____

DATE _____

SIGNATURE OF ATTORNEY OF RECORD _____

### FOR OFFICE USE ONLY

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

### Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.(a)   Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

**(b)   County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

**(c)   Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.   Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.
United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked**. (See Section III below; NOTE: federal question actions take precedence over diversity cases.)**

**III.   Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.   Nature of Suit.** Place an "X" in the appropriate box. If there are multiple nature of suit codes associated with the case, pick the nature of suit code that is most applicable. Click here for: Nature of Suit Code Descriptions.

**V.   Origin.** Place an "X" in one of the seven boxes.
Original Proceedings. (1) Cases which originate in the United States district courts.
Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441.
Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.
Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.
Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation – Transfer. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.
Multidistrict Litigation – Direct File. (8) Check this box when a multidistrict case is filed in the same district as the Master MDL docket.
**PLEASE NOTE THAT THERE IS NOT AN ORIGIN CODE 7.** Origin Code 7 was used for historical records and is no longer relevant due to changes in statute.

**VI.   Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: 47 USC 553 Brief Description: Unauthorized reception of cable service.

**VII.   Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand. In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.   Related Cases.** This section of the JS 44 is used to reference related cases, if any. If there are related cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.

AO 440 (Rev. 06/12)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Middle District of Florida

| | |
|---|---|
| Proven Industries, Inc. | ) |
| | ) |
| | ) |
| | ) |
| _____ | ) |
| *Plaintiff(s)* | ) |
| v. | )   Civil Action No. |
| McNally, Trevor | ) |
| | ) |
| | ) |
| _____ | ) |
| *Defendant(s)* | ) |

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*  Trevor McNally
7003 Whig Hill Drive
Spotsylvania, Virginia 22551-2951

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are: Derek Fahey, Esq. of The Plus IP Firm
101 NE 3rd Avenue, Suitre 1500, Fort Lauderdale, FL 33301
Derek@plusfirm.com; Austin@plusfirm.com; Jacqueline@plusfirm.com;
Docket@plusfirm.com
954-332-3584

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date: _____          _____
                                                                  *Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 06/12)  Summons in a Civil Action (Page 2)

Civil Action No.

**PROOF OF SERVICE**
*(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)*  Trevor McNally

was received by me on *(date)*                              .

❐ I personally served the summons on the individual at *(place)*

on *(date)*                    ; or

❐ I left the summons at the individual's residence or usual place of abode with *(name)*

, a person of suitable age and discretion who resides there,

on *(date)*                    , and mailed a copy to the individual's last known address; or

❐ I served the summons on *(name of individual)*                              , who is

designated by law to accept service of process on behalf of *(name of organization)*

on *(date)*                    ; or

❐ I returned the summons unexecuted because                              ; or

❐ Other *(specify):*

My fees are $                    for travel and $                    for services, for a total of $        0        .

I declare under penalty of perjury that this information is true.

Date:

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc:

Print    Save As...    Reset