UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

PROVEN INDUSTRIES INC.,

     Plaintiff,

                                 Case No. 8:25-CV-01119-MSS-LSG

v.

TREVOR McNALLY, individual,

     Defendant.

_____/

## DEFENDANT TREVOR MCNALLY'S OPPOSITION TO PLAINTIFF'S EMERGENCY MOTION FOR PRELIMINARY INJUNCTION

Defendant, Trevor McNally, files this opposition to Plaintiff's Emergency Motion for Preliminary Injunction [Doc. 10], and in support states as follows:[1]

## INTRODUCTION

Trevor McNally ("McNally") is a social media content creator who, among other things, posts videos exposing flaws in common locks to consumers. Proven Industries Inc. ("Proven") manufactures locks including a $130, model 651 latch pin lock (the "Proven Lock"). After being publicly challenged by Proven, McNally published a video in which he bypassed the Proven Lock with an aluminum can in a matter of seconds. Rather than accept the fact that its lock could be easily bypassed and address the flaws in its product, Proven attacked McNally and filed this lawsuit.

---

[1] McNally's response to Plaintiff's complaint has not been filed and is not yet due. As a result, McNally has not yet raised any personal jurisdiction defense that he may have. By filing this opposition, McNally does not intend to waive any personal jurisdiction defense or argument, and he expressly reserves the right to raise such defenses and arguments when he responds to the complaint.

In this case and motion, Proven attempts to use this Court to silence McNally by forcing him to remove social media content and prohibit him from posting about Proven. Proven's motion seeks an unconstitutional prior restraint and should be denied outright. Aside from the First Amendment concerns, Proven's motion should be denied because it fails to establish the elements necessary for a preliminary injunction.

## BACKGROUND

McNally is an honorably discharged, medically retired United States Marine Staff Sergeant. Declaration of Trevor McNally ("McNally Dec.") ¶ 3.[2] McNally operates the world's most-viewed lock-niche social media accounts on Instagram, Facebook, YouTube, TikTok, and Threads where he posts videos showing flaws in common locks. *Id.* ¶ 6. On social media, McNally makes cutaway locks that show the internal components and operation of different locking mechanisms. *Id.* ¶ 4.

Proven manufactures various locks including the Proven Lock. Proven operates social media channels on which it promotes its products. In March 2025, Proven posted a promotional video in which Proven touts the security and durability of the Proven Lock "to prove its haters wrong" (the "Proven Video"). *Id.* ¶ 7. After an Instagram user commented on the Proven Video suggesting that McNally could open the Proven Lock, Proven responded stating, "lol those guys like the cheap locks lol because they are easy and fast." *Id.* ¶¶ 8-10.

---

[2] The Declaration of Trevor McNally is being filed contemporaneously with this response.

McNally understood Proven's comment as a challenge and in response posted a video of himself opening the Proven Lock in a matter of seconds with an aluminum can in one continuous take (the "McNally Video"). *Id.* ¶¶ 10-11. McNally did not alter the Proven Lock and required minimal preparation to bypass the lock. *Id.* ¶ 17. The shim McNally used was not a unique design and did not require precise dimensions. *Id.* ¶ 17. Moreover, the Proven Lock uses a spring latch locking mechanism that has been one of the most common features in locks for over 150 years. *Id.* ¶ 12.

The same day that McNally posted the McNally Video, Proven sent McNally a direct message stating, "Just wanted to say thanks and be prepared!" *Id.* ¶ 19. One day later, Proven sent a text message to McNally's wife and called her cell phone purportedly trying to contact McNally. *Id.* ¶ 20. On April 6, 2025, Proven posted a video in response to the McNally Video (the "Response Video"). *Id.* ¶ 20. Numerous viewers commented on the Response Video criticizing Proven. Proven engaged with many of these comments, and during those interactions, asserted that things were "going to get really personal" for McNally. *Id.* ¶ 25. Proven published multiple comments claiming and/or insinuating that McNally was misleading viewers with the McNally Video. *Id.* ¶¶ 27-33.

On May 1, 2025, Proven filed this lawsuit. Proven then boasted about the lawsuit on social media, encouraging people to search for the lawsuit, and continuing to attack McNally. *Id.* ¶¶ 34-35. After staying silent for weeks, on May 23, 2025, McNally posted a new video to his social media channels to dispel Proven's inaccurate

comments about him. *Id.* ¶ 36. In the May 23, 2025 video, in one continuous shot, McNally retrieves a new Proven Lock in its original sealed packaging from an Amazon locker and shows the entire process of creating a shim and bypassing the lock. *Id.* ¶¶ 38-39. On May 25, 2025, McNally posted another video in which he retrieves another Proven Lock in its original packaging from an Amazon locker and demonstrates another method of shimming the lock, again in one continuous shot. *Id.* ¶¶ 40-44. On May 28, 2025 and May 31, 2025, McNally posted two more videos in which he shims other Proven locks to show that the shim design is not specific to the Proven Lock. *Id.* ¶¶ 45-53.[3]

Instead of accepting the reality that the Proven Lock and Proven's other locks could be bypassed by McNally as shown in his videos, Proven filed its motion for preliminary injunction seeking to enjoin McNally from posting videos about Proven.

## **ARGUMENT**

I.   **Proven's motion should be denied because Proven seeks an unconstitutional prior restraint.**

A preliminary injunction directed towards speech is a classic example of a prior restraint triggering First Amendment concerns. *Alexander v. U.S.,* 509 U.S. 544, 550 (1993). Prior restraints constitute "one of the most extraordinary remedies known to our jurisprudence" and are universally recognized to be "the most serious and the least tolerable infringement on First Amendment rights." *Nebraska Press Ass'n v. Stuart,*

---

[3] The videos posted on May 23, May 25, May 28, and May 31 are collectively referred to as the "Subsequent Videos."

427 U.S. 539, 559, 562 (1976). The Supreme Court has emphasized that any prior restraint bears a "heavy presumption against its constitutional validity." *New York Times Co. v. United States,* 403 U.S. 713, 714 (1971). Based on these significant constitutional concerns, "the judiciary routinely refuses to enjoin speech before the final adjudication of the defendant's liability." *Kazal v. Price*, 2017 WL 6270086, at *4 (M.D. Fla. Dec. 8, 2017) (collecting cases).

Here, Proven seeks an injunction to restrict McNally's speech. Among other things, Proven asks this Court to enter an injunction prohibiting McNally from "publishing, reposting, or distributing any video, post or content that falsely implies Plaintiff's lock product can be trivially bypassed without tools, expertise, or preparation." Doc. 10, p. 24. Proven also seeks a mandatory injunction requiring McNally to remove existing videos, social media content, and comments made by others. *Id.* Proven's motion fails to provide any explanation why the proposed injunction does not constitute a prior restraint, nor does it provide any justification that would rebut the presumptive unconstitutionality of the requested injunction. For this reason alone, Proven's motion should be denied. *See Miracle Surrogacy, LLC v. Monello-Fuentes*, 2025 WL 1154420, at *3 (S.D. Fla. Apr. 14, 2025) (denying Plaintiff's motion for temporary restraining order because it seeks "improper injunctive relief" based on the fact that "Plaintiffs offer no reason why the proposed injunction does not constitute a prior restraint or censorship on speech, nor do they offer any justification, let alone a compelling one, that would rebut the presumptive unconstitutionality of

the injunction").[4]

## II.   Proven's motion should be denied because it seeks relief beyond that framed by the complaint.

"A request for injunctive relief is properly denied when the movant seeks relief with respect to claims outside those raised in the operative complaint." *Logan v. Clemmons*, 2019 WL 2503195, at *1 (M.D. Fla. June 17, 2019). The claims in Proven's complaint are based solely on the McNally Video. Nevertheless, Proven's motion seeks relief related to and based upon the Subsequent Videos. For example, the defamation claim in the complaint is based only on the McNally Video; however, Proven's claimed justification for the requested injunction is based, in large part, on the Subsequent Videos. Proven could have amended its complaint in conjunction with filing its motion but did not do so.[5] As a result, Proven's motion  seeks relief with respect to claims outside those raised in the operative complaint and, therefore, should be denied. *See Logan*, 2019 WL 2503195, at *1.

## III.   Proven cannot demonstrate it is entitled to a preliminary injunction.

Putting aside the constitutional concerns and the pleading deficiency, Proven still would not be entitled to a preliminary injunction. This Court may grant injunctive

---

[4] Proven cites *Sui et al. v. Harry Wu et al.,* 2011 WL 1396994 (M.D. Fla. April 13, 2011), *Murtaugh v. Hurley,* 40 So. 3d 62 (Fla. 2d DCA 2010), and *Baker v. Joseph,* 938 F.Supp.2d 1265 (S.D. Fla. 2013) for the proposition that, in certain rare instances, speech can be enjoined. Proven, however, fails to explain how those cases apply to the facts of this case such that Proven can overcome the presumption of constitutional invalidity. Moreover, these cases are inapposite as the court in each case did not grant an injunction enjoining speech.

[5] Proven styles its motion as an "emergency," but nothing about this case warrants emergency relief. Proven's purported justification for raising this motion on an emergency basis is "the ongoing and escalating reputational and commercial harm" it is purportedly suffering, but fails to explain why this constitutes an emergency. Doc. 10, p. 2.

relief only if Proven shows "(1) it has a substantial likelihood of success on the merits; (2) irreparable injury will be suffered unless the injunction issues; (3) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) if issued, the injunction would not be adverse to the public interest." *Siegel v. LePore,* 234 F.3d 1163 (11th Cir. 2000).

A preliminary injunction "is an extraordinary and drastic remedy not to be granted unless the movant clearly established the burden of persuasion as to each of the four prerequisites." *Id.* Proven's burden is even greater because it seeks to restrain speech and because it seeks a mandatory injunction. "In the case of a prior restraint on pure speech, the hurdle is substantially higher than that necessary to obtain a traditional preliminary injunction: publication must threaten an interest more fundamental than the First Amendment itself." *Bollea v. Gawker Media, LLC*, 2012 WL 5509624, at *2 (M.D. Fla. Nov. 14, 2012) (citation omitted); *see Pinkston v. Univ. of S. Florida Bd. of Trustees*, 2016 WL 11469181, at *2, n. 6 (M.D. Fla. May 18, 2016) ("When a preliminary injunction is sought to force another party to act, rather than simply to maintain the status quo, it becomes a mandatory or affirmative injunction and the burden on the moving party increases").

### A. Proven cannot show a likelihood of success on the merits of its claims.

#### 1. Proven is unlikely to succeed on its copyright infringement claim because the McNally Video is fair use.

Proven asserts a claim for copyright infringement based upon the McNally Video which includes approximately 14 seconds of spliced-together clips from the

Proven Video. As explained below, McNally's use of the clips from the Proven Video is fair use such that Proven's copyright claim will not succeed.

The Copyright Act provides that "the fair use of a copyrighted work . . . for purposes such as **criticism, comment**, news reporting, [or] teaching . . . is not an infringement of copyright." 17 U.S.C. § 107. Section 107 provides four non-exclusive factors to consider in determining whether a particular use of a copyrighted work is a fair use: (1) the purpose and character of the use; (2) the nature of the copyrighted work; (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and (4) the effect of the use upon the market for the copyrighted work. *Id.* The four factors must be considered together, not "treated in isolation." *Andy Warhol Found. for the Visual Arts, Inc. v. Goldsmith,* 598 U.S. 508, 550 (2023) (citation omitted). In this case, each of these four factors weighs in McNally's favor establishing that the McNally Video is protected fair use.

### i.    The purpose and character of the use was transformative.

The first factor in the fair use inquiry cuts decisively in McNally's favor. The primary focus of this factor is "whether the new work merely supersede[s] the objects of the original creation or instead adds something new," and is therefore transformative. *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 579 (1994) (citation omitted). If, for example, the work is used but "transformed" into the creation of "new information, new aesthetics, new insights, and new understandings - this is the very type of activity that the fair use doctrine intends to protect." *Campbell,* 510 U.S. at 579. Criticism of a work falls squarely within fair use because it "ordinarily does not

supersede the objects of, or supplant, the work. Rather, it uses the work to serve a distinct end." *Warhol,* 598 U.S. at 528; *see e.g., Kane v. Comedy Partners*, 2003 WL 22383387, at *4 (S.D.N.Y. Oct. 16, 2003) (finding that the use of a video clip from plaintiff's public access show accompanied by the defendant's derisive, mocking commentary amounted to criticism and was fair use); *Hughes v. Benjamin*, 437 F. Supp. 3d 382, 391 (S.D.N.Y. 2020) (granting a motion to dismiss an infringement claim over the defendant's posting of a video consisting entirely of unaltered clips from a YouTube video created by the plaintiff, and holding that defendant's video was fair use because it was clear that the defendant "copied portions of [the plaintiff's video] for the transformative purposes of criticism and commentary.") *Hosseinzadeh v. Klein*, 276 F. Supp. 3d 34, 39–40 (S.D.N.Y. 2017) (expressing "no doubt" that YouTube video containing clips of plaintiff's video interspersed with "mockery," "criticism and commentary" on plaintiff's video was fair use).

Here, the McNally Video used portions of Proven's promotional video for criticism and commentary. Proven's original video was made to promote its product and demonstrate the Proven Lock's supposed durability and security. McNally used short clips from the Proven Video for an entirely different purpose—*i.e.*, to comment on and criticize the Proven Video and Proven Lock—and created a new work with an entirely different character. Accordingly, the McNally Video is transformative, and the first factor in the fair use inquiry weighs decidedly in McNally's favor.

> ii. **The nature of the work was minimally creative and previously published.**

"The second fair use factor—the nature of the copyrighted work—recognizes that there is a hierarchy of copyright protection in which original, creative works are afforded greater protections than derivative works or factual compilations." *Katz v. Google Inc.*, 802 F.3d 1178, 1183 (11th Cir. 2015) (citation omitted). "In evaluating this factor, courts consider (1) whether the work was previously published and (2) whether the work is primarily creative or factual." *Id.* There is no dispute that the Proven Video was published prior to McNally's use. Further, the Proven Video was minimally creative; rather, it was a simple factual demonstration regarding the alleged durability and security of the Proven Lock. Accordingly, the second fair use factor weighs in McNally's favor.

### iii.    The portion of the work used was minimal and integral to the criticism.

The third factor weighs "the amount and substantiality of the portion used in relation to the copyrighted work as a whole." 17 U.S.C. § 107(3). In looking at this factor, the "court must ask whether the defendant has "helped [himself] overmuch to the copyrighted work in light of the purpose and character of the use." *Katz v. Google Inc.*, 802 F.3d 1178, 1183 (11th Cir. 2015) (quotation omitted). The Supreme Court has recognized, however, that clips of an original work are often necessary to comment on and critique a work. *Campbell*, 510 U.S. at 588 ("[P]arody must be able to 'conjure up' at least enough of that original to make the object of its critical wit recognizable....Copying does not become excessive in relation to parodic purpose merely because the portion taken was the original's heart.").

Here, McNally used approximately 14 seconds of spliced-together clips from Proven's 90 second video. The selected clips—which purport to show the durability and security of Proven's lock—were integral to criticize the supposed security of the Proven Lock and Proven Video, and McNally only used as much of the Proven Video as necessary. Thus, the third factor favors fair use or, at minimum, is neutral. *Latimer v. Roaring Toyz, Inc.*, 2010 WL 3747148, at *4 (M.D. Fla. Sept. 21, 2010) ("where the secondary copier uses only as much as needed to further its purpose, this factor weighs neither in favor of nor against a finding of fair use").

### iv.    The use had no effect on the market because there is no viable market for Proven's Video.

The fourth factor the Court must consider in the fair use analysis is "the effect of the use upon the potential market for or value of the copyrighted work." 17 U.S.C. § 107(4). This factor is "undoubtedly the single most important element of fair use, since a proper application of fair use does not impair materially the marketability of the copied work." *Cable/Home Commc'n Corp. v. Network Productions, Inc.*, 902 F.2d 829, 845 (11th Cir. 1990) (citation omitted). The purpose of the fourth factor is to determine to what degree an allegedly infringing work "usurps" demand for the copyrighted work. *See Campbell*, 510 U.S. at 592. Critically, however, there is "'no protectible derivative market for criticism' because of 'the unlikelihood that creators of imaginative works will license critical reviews or lampoons of their own productions.'" *Peter Letterese And Associates, Inc. v. World Inst. Of Scientology Enterprises*, 533 F.3d 1287, 1318 (11th Cir. 2008) (quoting *Campbell*, 510 U.S. at 592); *see also Campbell*, 510 U.S.

11

at 592 ("[T]he law recognizes no derivative market for critical works, including parody."). In cases of criticism or parody, "the role of the courts is to distinguish between biting criticism that merely suppresses demand and copyright infringement, which usurps it." *Campbell*, 510 U.S. at 592 (cleaned up).

In this case, there is no viable market for the Proven Video. The Proven Video is a promotional video that has no value to anyone other than Proven. The McNally Video did not "usurp" demand for the Proven Video because no such demand exists. Moreover, the McNally Video was a critical work that borrowed only a small portion of the Proven Video. Thus, there is no derivative market for the work. Accordingly, the McNally Video had no effect on the market for the Proven Video, and the fourth factor falls squarely in McNally's favor.

\*    \*    \*

Each of the four fair use factors weigh in McNally's favor and establish that the McNally Video is protected fair use. Accordingly, Proven is unlikely to succeed on the merits of its copyright infringement claim.

### 2.    Proven is unlikely to succeed on the merits of its defamation by implication claim.

Proven purports to assert a claim for defamation by implication based on the notion that the McNally Video "falsely implied to viewers that Plaintiff's business was dishonest or incompetent and that Plaintiff's lock product was inherently untrustworthy." Doc. 1, ¶ 94. This purported false implication arises because McNally allegedly failed to disclose that "bypassing the lock required prior disassembly of the

product to examine its internal components, including the position of the plunger, and to manufacture a custom-fit shim with precise notch dimensions." *Id.* at ¶ 41.[6] Critically, neither the complaint nor the motion identify any written or oral statements upon which Proven's defamation claim is based.

"Under Florida law, defamation encompasses both libel and slander—slander is ordinarily confined to defamatory spoken words, whereas libel pertains to defamatory written statements." *Tillett v. BJ's Wholesale Club, Inc.*, 2010 WL 11507322, at *2., n. 4 (M.D. Fla. July 30, 2010) (cleaned up). Defamation by implication is a "species of defamation that is subsumed within the tort of defamation," and "[a]ll of the protections of defamation law that are afforded to the media and private defendants are [ ] extended to the tort of defamation by implication." *Jews For Jesus, Inc. v. Rapp*, 997 So. 2d 1098, 1108 (Fla. 2008).

A claim for defamation cannot be based on non-verbal acts on their own without accompanying written or oral statements. *See Hoon v. Pate Const. Co., Inc.,* 607 So.2d 423, 428-29 (Fla. 4th DCA 1992) (rejecting the argument that the decision to decline a contractor's low bid could constitute defamation); *Sequeira v. Gate Safe, Inc.*, No. 16-24542-CIV, 2017 WL 6568196, at *3 (S.D. Fla. Oct. 27, 2017) (holding plaintiff could not sustain a defamation claim based on non-verbal conduct); *Nat'l Numismatic Certification, LLC. v. eBay, Inc.*, 2008 WL 2704404, at *22 (M.D. Fla. July 8, 2008)

---

[6] Although Proven's complaint does not contain defamation by implication claims based on the Subsequent Videos, Proven's motion asserts that the additional videos continue the defamatory implication established in the first video. Doc. 10, pp. 15-16.

(email expressing a non-verbal act could not serve as the basis for a defamation claim). Proven has not identified any written or oral statements that serve as the basis of its defamation claim. In fact, McNally does not speak or publish any written statement in the McNally Video (the only video framed by the complaint), and the complaint concedes that McNally "makes no verbal statements" in that video. Doc. 1, ¶ 43. Moreover, Proven does not identify any false statements in the Subsequent Videos or explain how otherwise truthful statements in those videos create a false and defamatory implication. Instead, Proven's defamation claim is based solely on McNally's non-verbal conduct, which cannot serve as the predicate for a defamation claim. Accordingly, Proven is unlikely to succeed on the merits of its defamation by implication claim.

Even if Proven's defamation by implication claim could be based on the non-verbal conduct in the videos, it would still fail as a matter of law. Although defamation by implication can arise when a defendant "creates a defamatory implication by omitting facts" *Loomer v. Maher*, 2025 WL 756549, at *4 (M.D. Fla. Jan. 16, 2025) (citations and quotations omitted), the McNally Video and the Subsequent Videos do no such thing.

Proven argues that the McNally Video is inaccurate and misleading because it surmises that McNally could not have shimmed the lock as quickly and as easily without substantial preparation. Proven's speculation is simply wrong. The Proven Lock in the video was not altered, McNally's bypass required only minimal preparation, and it did not require a specialized shim with a unique design. McNally's

May 23, 2025 and May 25, 2025 videos confirm this as he opens a brand-new Proven Lock in its original packaging, uses scissors to cut a shim from an aluminum can without any measurements, and then quickly bypasses the lock with that shim, all in one continuous shot. No material facts were omitted from the McNally Video or the Subsequent Videos. Thus, Proven is unlikely to succeed on the merits of its defamation by implication claim.

### 3. Proven is unlikely to succeed on the merits of its tortious interference claim.

Proven purports to assert a claim for tortious interference with prospective business relationships. Proven's claim is based on the notion that McNally intentionally and unjustifiably interfered with Proven's business relationships when he published the McNally Video, which Proven characterizes as false, disparaging, and misleading. Doc. 1, ¶¶ 118, 119. To the extent Proven has a viable defamation claim, its tortious interference claim is barred by the single action rule. Under Florida law, a single publication gives rise to a single cause of action. *Bongino v. Daily Beast Co., LLC*, 477 F. Supp. 3d 1310, 1320–21 (S.D. Fla. 2020). Simply stated, "claims premised on allegedly defamatory statements must be brought as defamation claims and not as separate tort claims." *Club Exploria, LLC v. Aaronson, Austin, P.A.*, 2019 WL 5328738, at *4 (M.D. Fla. Oct. 21, 2019). "The purpose of the rule is to prevent plaintiffs from using other causes of action to evade the doctrinal and other limitations imposed upon defamation actions, which reflect a careful balance between the societal interest in freedom of speech and the interests of potential plaintiffs." *Id.*

Proven asserts that the publication of the McNally Video and the Subsequent Videos tortiously interfered with its business relationships because the videos are false, disparaging, and misleading. That same alleged conduct, however, serves as the basis for Proven's defamation claim. The single action rule bars Proven's tortious interference claim.

Even if the single action rule did not bar Proven's tortious interference claim, the claim will still likely fail. To prevail on a claim for tortious interference with an advantageous business or contractual relationship one must show, "(1) the existence of a business relationship that affords the plaintiff existing or prospective legal rights; (2) the defendant's knowledge of the business relationship; (3) the defendant's intentional and unjustified interference with the relationship; and (4) damage to the plaintiff." *DeBose v. USF Bd. of Trustees,* 811 Fed. Appx. 547, 555 (11th Cir. 2020). "As a general rule, an action for tortious interference with a business relationship requires a business relationship evidenced by an actual and identifiable understanding or agreement which in all probability would have been completed if the defendant had not interfered." *Ethan Allen, Inc. v. Georgetown Manor, Inc.,* 647 So.2d 812, 815 (Fla.1994). "[N]o cause of action exists for tortious interference with a business's relationship to the community at large." *Id.*; *Locked Offroad, LLC v. Carbon Shock Techs., Inc.*, 2023 WL 3121346, at *3 (M.D. Fla. Mar. 14, 2023).

Proven does not allege business relationships with identifiable customers. Instead, it alleges that McNally's videos are interfering with Proven's business relationships with the community at large. Proven's complaint does not identify

16

specific, actual customers; rather, Proven alleges, in conclusory fashion, that it had "valid business relationships with existing and prospective customers including trailer manufacturers, distributors, and end-users." Proven's failure to identify specific business relationships with which McNally interfered is fatal.

Further, as explained above in the defamation section, there is nothing false or misleading about the McNally Video or the Subsequent Videos. Because the videos accurately depict McNally bypassing Proven's locks, those videos cannot serve as the basis for a tortious interference claim. *See, e.g., Worldwide Primate, Inc. v. McGreal*, 26 F.3d 1089, 1092 (11th Cir. 1994) (activist who truthfully reported to a wildlife import company's client that the company had problems complying with government directives in the past could not be liable for interference with contract); *Georgetown Manor, Inc. v. Ethan Allen, Inc.*, 991 F.2d 1533,1540-41 (11th Cir. 1993) (recognizing the "privilege to publish truthful information" as defense to tortious interference claim). For these reasons, Proven is unlikely to prevail on the merits of its tortious interference claim.

**B.    Proven cannot demonstrate irreparable harm.**

Proven contends it is entitled to a preliminary injunction because McNally's videos are causing irreparably injury. However, "[a]n injury is 'irreparable' only if it cannot be undone through monetary remedies." *Cunningham v. Adams*, 808 F.2d 815, 821 (11th Cir. 1987). And each of Proven's claims offered in support of its motion for preliminary injunction include an effective remedy for money damages.

With respect to the defamation claim, Florida law is clear that "[i]n the case of

17

a libelous or defamatory statement, there is an adequate remedy at law—an action for damages." *Vrasic v. Leibel*, 106 So. 3d 485, 486 (Fla. 4th DCA 2013). Proven does not even seek injunctive relief in the tortious interference claim in its complaint. Doc. 1, p. 30. Likewise, Proven fails to address its tortious interference claim in the irreparable harm section of its motion. Doc. 10, pp. 18-20. Proven also concedes it suffered "measurable harm" in its tortious interference claim and that its harm "was not only foreseeable, but it was also immediate and confirmed." Doc. 10, p. 18.

As to the copyright claim, "the justification of the copyright law is the protection of the *commercial* interests of the artist/author. It is not to coddle artistic vanity or to protect secrecy, but to stimulate creation by protecting its rewards." *Salinger v. Colting*, 607 F.3d 68, 81 n.9 (2d Cir. 2010) (citation omitted) (emphasis in original). Accordingly, monetary damages would provide an adequate remedy if there was a market for the Proven Video, but there is not. Insofar as Proven's interest is in protecting its reputation rather than in reaping a market benefit from the sale or licensing of its video, its interest is not one that copyright law protects. *See Suntrust Bank v. Houghton Mifflin Co.*, 268 F.3d 1257, 1282 (11th Cir. 2001) (goal of copyright law "'focus[es] on the right of the individual to reap the reward of his endeavors and ha[s] little to do with protecting feelings or reputation'") (citation omitted). Proven cannot demonstrate irreparable harm in connection with any of the claims identified in the motion.

## C.    The balance of harms favors McNally.

The third step in a preliminary injunction analysis requires the Court to balance

the risk of irreparable harm to the plaintiff against the risk of harm to the defendant. Here, the risk of harm to McNally is significant based on the potential infringement on his First Amendment rights. The Supreme Court has repeatedly recognized that even minimal interference with the First Amendment causes an irreparable injury. *Nebraska Press Ass'n,* 427 U.S. at 559; *Elrod v. Burns,* 427 U.S. 347, 373–74 (1976); *see also CBS, Inc. v. United States District Court*, 729 F.2d 1174, 1177 (9th Cir. 1984) ("the first amendment informs us that the damage resulting from a prior restraint – even a prior restraint of the shortest duration – is extraordinarily grave"). In fact, a "prior restraint[ ] on speech and publication [is] the most serious and least tolerable infringement on [a person's] First Amendment rights." *Nebraska Press Ass'n*, 427 U.S. at 559. On the other hand, the risk of irreparable harm to Proven is minimal because Proven has remedies at law for each of its claims. Accordingly, the balance of harms favors McNally.

### D.    The public interest weighs against granting a preliminary injunction.

Finally, the public interest weighs against issuing an injunction. As the Court noted in *Suntrust Bank*, "the public interest is *always* served in promoting First Amendment values and in preserving the public domain from encroachment." 268 F.3d at 1276 (emphasis added). Accordingly, the public interest favors McNally's ability to publish his content.

### IV.    To the extent Proven seeks to hold McNally liable for the comments and/or actions of others, McNally is immune.

Proven's motion raises numerous issues regarding the harms it is purportedly

suffering from third parties it believes are "McNally's followers." To the extent Proven seeks to hold McNally liable for the comments and/or actions of others, McNally is immune under Section 230 of the Communications Decency Act.

"To enjoy immunity under Section 230, the following are required: (1) defendant be a service provider or user of an interactive computer service; (2) the cause of action treats a defendant as a publisher or speaker of information; and (3) a different information content provider provided the information." *Roca Labs, Inc. v. Consumer Opinion Corp.*, 140 F. Supp. 3d 1311, 1319 (M.D. Fla. 2015). McNally is a user of an interactive computer service when he publishes on social media platforms. It appears Proven wants to hold McNally liable for content posted by third parties. If so, McNally is immune from liability under Section 230.

## V. Proven's motion fails to comply with Local Rule 6.02.

Local Rule 6.02 provides that a motion for preliminary injunction must comply with Local Rule 6.01(a) and (b). Local Rule 6.01(a) requires "a precise and verified explanation of the amount and form of the required security" and a proposed order. Because Proven failed to comply with these procedural requirements, its motion should be denied. *Cassidy v. Citrus Cnty. Mosquito Control Dist.*, 2025 WL 506686, at *3 (M.D. Fla. Feb. 14, 2025) ("Plaintiff's Motion does not include a proposed order. As such, it is due to be dismissed for its procedural defects.").

## <u>CONCLUSION</u>

For the reasons stated above, the Court should deny Proven's Emergency Motion for Preliminary Injunction.

*/s/ Kenneth G. Turkel*
Kenneth G. Turkel - FBN 867233
LEAD COUNSEL
E-mail: kturkel@tcb-law.com
David A. Hayes - FBN  96657
E-mail: dhayes@tcb-law.com
TURKEL CUVA BARRIOS, P.A.
100 N. Tampa Street, Suite 1900
Tampa, FL 33602
Tel: (813) 834-9191
Fax: (813) 443-2193
*Attorneys for Defendant*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on June 6, 2025, the foregoing document was filed with the Court's CM/ECF system, which will send electronic notice to all counsel of record.

*/s/ Kenneth G. Turkel*
Attorney