UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION
Case No. 8:25-cv-01119-MSS-LSG

Proven Industries, Inc., a Florida corporation,
 *Plaintiff,*

 v.

Trevor McNally, individual,
 *Defendant.*
_____/

# PLAINTIFF'S MOTION TO SEAL
# UNDER LOCAL RULE 1.11

 Plaintiff, Proven Industries, Inc. ("Plaintiff"), moves the Court to limit access to the Court's Order denying Plaintiff's Emergency Motion for Preliminary Injunction and the docket entries corresponding thereto pursuant to Local Rule 1.11, and states the following:

**I. DESCRIPTION OF ITEMS TO BE SEALED**

 1. Plaintiff's Emergency Motion for Preliminary Injunction and supporting documents [DE 10-1 to DE 10-30].

 2. Order Setting Hearing [DE 12] and Notice of Hearing [DE 13].

 3. Defendant's Response in Opposition to Plaintiff's Motion Emergency Motion for Preliminary Injunction [DE 014] and Declaration of Trevor McNally and supporting documents [DE 15-01 to DE 15-13].

 4. Plaintiff's Reply [DE 17] to Defendants Response in Opposition and proposed order [DE 17-1], Second Supplemental Declaration of Anthony Sansone [DE 18], Notice of Manual Filing [DE 18-1] and corresponding exhibit [DE 18-2] to

Declaration of Anthony Sansone's Second Supplemental Declaration.

5. Plaintiff's Exhibit List [DE 19] and Plaintiff's Witness List [DE 20].

6. Defendant's Exhibit List [DE 22] and Defendant's Witness List [DE 21].

7. The minutes [DE 25] from the hearing held on June 13, 2025, regarding Plaintiff's Emergency Motion for Preliminary Injunction.

8. Defendant's Exhibit List for Preliminary Injunction Hearing [DE 26] pursuant to the Court's Order dated June 3, 2025 [DE 12].

9. Plaintiff's Exhibit List for Preliminary Injunction Hearing [DE 27] pursuant to the Court's Order dated June 3, 2025 [DE 12].

10. The Court's yet to be issued Order denying Plaintiff's Emergency Motion for Preliminary Injunction for copyright infringement and defamation by implication ("the Order") and transcript of the hearing.

11. This Motion to Seal and accompanying Exhibits.

12. Collectively, the documents described in paragraphs 1 – 11 of this Plaintiff's Motion to Seal are referred to as "Hearing Materials."

## II. NECESSITY OF FILING THE ITEMS

13. The Hearing Materials are essential court records documenting the Court's decision and rationale regarding Plaintiff's Emergency Motion for Preliminary Injunction.

14. These documents contain critical information regarding the Court's analysis of Plaintiff's claims for copyright infringement and defamation by implication intertwined with tortious interference.

15. The items are necessarily part of the Court's record and essential for any potential appeal or further proceedings in this matter.

## III. NECESSITY OF SEALING THE ITEMS

### A. Demonstrated Pattern of Harassment and Intimidation by Defendant McNally's Social Media Followers and Viewers

16. In Defendant McNally's second video (Part II), Defendant McNally mentions that Plaintiff sued him. After the Part II video, Plaintiff experienced additional severe and targeted harassment messages from Defendant McNally's social followers and viewers. Exhibit A, ¶¶ 3 - 14. As described in the Declaration of Ronald James Lee, II (hereinafter "Ronald Lee"), attached hereto as **Exhibit A**:

    a. Defendant McNally's social media followers have engaged in coordinated attacks against Plaintiff's executives, employees, and their loved ones on various social media platforms; Exhibit A, ¶¶ 3 - 10; 12 - 14.

    b. Defendant McNally's social media followers researched and then publicly disclosed online - without authorization (commonly known as "doxxing") – the cell phone number of Plaintiff's President, Ronald Lee; *Id.* at ¶ 11; *See also* Exhibit L [DE 10-23] to Declaration of Ronald James Lee, II [DE 10-12] in Support of Plaintiff's Emergency Motion for Preliminary Injunction.

    c. Defendant McNally's social media followers and viewers have sent Plaintiff's employees, including Ronald Lee, waves of harassing, threatening, and intimidating emails, direct messages, comments and calls. Exhibit A, ¶1; 12 – 14; Exhibit G [DE 10-18] and Exhibit K [DE 10-22], to Declaration of Ronald James Lee, II [DE 10-12] In Support of Plaintiff's Emergency Motion for Preliminary Injunction.

17. In addition to the above, the Declaration of Ronald Lee (Exhibit A) and Declaration of Derek Fahey, Esq. (Exhibit B) provide detailed examples of this conduct, including but not limited to:

   a. Harassing and threatening messages sent to Ronald Lee's personal phone. Exhibit A, at ¶ 11; *see also* Exhibit L [DE 10-23].

   d. Messages containing racial slurs and violent threats directed at Ronald Lee's son and family members. *Id.* at ¶ 12. *see also* Exhibit N [DE 10-25].

   e. Two physical letters mailed to Ronald Lee's residence and addressed to his girlfriend, who resides with him but is not listed on the title or deed to the property. *Id.* at ¶¶ 4 – 9.

18. A key witness who was prepared to testify as to the false implication at the preliminary injunction hearing ultimately declined to appear specifically due to fears of retaliation and harassment from Defendant McNally's social media followers. The potential witness specifically stated: "Is there a way to leave my name and my companies name out of this due to concerns of potential BLOW BACK from McNally or others like him." Exhibit B at ¶ 4.

19. Additionally, Anthony Bonfiglio, another non-party witness who ultimately agreed to submit a declaration, expressed hesitation prior to signing. He specifically asked whether the declaration would be public and stated: "Also, is this going to be public? My concern is that there may be some backlash from the other side towards my company." *Id.* at ¶ 5.

20. In 2023, Defendant McNally posted a viral video claiming to bypass a lock made by EZ Home using a piece of a milk jug. Exhibit B at ¶ 15. The video reused copyrighted content and triggered widespread negative reviews to EZ Home by

3

Defendant's McNally's social media followers and viewers. When EZ Home issued a takedown notice, Defendant McNally responded with another video accusing the company of censorship. *Id*. Even a year later, EZ Home continued to receive customer reviews on Amazon referencing the milk jug videos. This incident illustrates Defendant McNally's pattern of conduct: targeting a product or company through social media, provoking viral backlash, and encouraging his followers to perpetuate the harm long after the initial post. *Id*. The same dynamic is now playing out against Plaintiff, reinforcing the need to prevent future escalation by sealing the Hearing Materials. *Id*.

21.  This pattern of intimidation and harassment by individuals influenced by Defendant McNally's content demonstrates the real and substantial threat posed by continued public disclosure of the Hearing Materials related to Plaintiff's Emergency Motion for Preliminary Injunction. These materials contain additional sensitive information, including the names of witnesses, details of their involvement, descriptions of Plaintiff's internal business operations, and statements made during the preliminary injunction hearing that could be taken out of context or mischaracterized by Defendant McNally's social media followers and viewers to further incite harassment of Proven's employees, their family members or loved ones. This information in the Hearing Materials could be weaponized by Defendant McNally's social media followers or viewers to escalate the harassment already experienced by Plaintiff, Plaintiff's employees and their loved ones, and third-party witnesses. Exhibit A, ¶¶ 16 –17; Exhibit B, ¶¶ 9 – 10.

22.  There is substantial, credible evidence that Defendant McNally's social media followers and viewers will information contained in the Hearing Materials to

4

entice other followers of Defendant McNally to conduct additional targeted harassment campaigns against Plaintiff, its employees and their families or loved ones. *See* Exhibit A, ¶¶ 3-13, 15; Exhibit B, ¶¶ 4-5, 9.

23. For example, after Plaintiff filed its Emergency Motion for Injunctive Relief, the girlfriend of Ronald Lee, received a letter from one of Defendant McNally's social media followers discussing this case. Exhibit B, ¶ 8. What is most concerning about this letter to Ronald Lee's girlfriend is that the online harassment from Defendant McNally's social media followers or viewers has now moved to the physical world and messages with language threatening violence and physical harm have already received by Ronald Lee's family. *Id.* at ¶ 9.

24. Moreover, in the Declaration of Ronald James Lee, II [DE 10-12], Plaintiff discloses sensitive and confidential business information, including but not limited to: (i) product marketing strategies and online advertising performance metrics [DE 10 at ¶31], (ii) internal customer service procedures and disruption reports (*Id.* at ¶15, ¶16, ¶26, ¶33), and (iii) specific financial harm resulting from Amazon indexing and advertising losses (*Id.* at ¶¶30–31). These materials reflect proprietary commercial strategies and trade knowledge not publicly disclosed and are of the type that, if revealed, could cause commercial disadvantage to Plaintiff and benefit competitors or malicious actors.

25. As such, sealing is warranted to preserve confidentiality, prevent competitive harm and prevent further harassment by Defendant McNally's social media followers or viewers.

### B. Risk of Irreparable Harm

26. The Hearing Materials contain sensitive business information, personal

details about Plaintiff's operations and personnel, that if remain public could be used by Defendant McNally's social media followers or viewers to:

    a. coordinate or entice further harassment campaigns;

    b. physically harm Plaintiff's employees, loved ones or family members (which has already been threatened);

    c. identify additional targets for harassment, including witnesses, associates, family members and loved ones;

    d. identify, research, and disclose additional personal information without permission; and

    e. disseminate misleading characterizations of the proceedings to entice harm to Plaintiff's employees' loved ones and family;

27. If the information remains or is made public, Defendant McNally's extensive social media following would have continued and widespread access to the information.

28. The harm that could result if the information remains or is made public substantially outweighs the public's interest in access to these specific court documents. *See In re Alexander Grant & Co. Litigation*, 820 F.2d 352, 356 (11th Cir. 1987).

## IV. UNAVAILABILITY OR UNSATISFACTORY NATURE OF ALTERNATIVES

29. Alternatives to sealing the Hearing Materials in their entirety are inadequate for the following reasons:

    a. **Redaction is Insufficient**: The sensitive information is inextricably intertwined throughout Hearing Materials. Even with redactions, contextual information would remain that Defendant McNally's

social media followers or viewers could use to identify, investigate and target individuals associated with Plaintiff. This is true because Defendant McNally's social media followers have already contacted Ronald Lee's girlfriend and mother – who are both not involved in this lawsuit. Exhibit A, ¶¶ 4–7, 12.

b. **Pseudonyms are Ineffective**: This case has already been publicly identified with the named parties. Using pseudonyms at this stage would not prevent Defendant McNally's social media followers or viewers from accessing the Hearing Materials to further entice others to harass and threaten Proven's employees, their family members and loved ones.

c. **Limited Access**: Providing limited access to only the parties' attorneys would adequately protect against the disclosure of sensitive information and prevent Defendant McNally's social media followers from using the Hearing Materials to entice others to further harass or harm Proven's employees, their family members and loved ones.

30. Sealing the Hearing Materials in their entirety and providing limited access to the parties' attorneys will provide protection against further harm from Defendant McNally's social media followers' and viewers' demonstrated pattern of harassment.

V. **LEGAL MEMORANDUM**

31. Local Rule 1.11 permits the sealing of court records upon a showing of good cause. Local Rule 1.11 requires that the motion to seal establish that (A) filing the item is necessary, (B) sealing the item is necessary, and (C) using a redaction, a

7

pseudonym, or a means other than sealing is unavailable or unsatisfactory.

32. Courts have supervisory power over their records and may seal documents when the public's right of access is outweighed by interests favoring non-disclosure. See *Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 598 (1978); *Chicago Tribune Co. v. Bridgestone/Firestone, Inc.*, 263 F.3d 1304, 1311 (11th Cir. 2001).

33. "Good cause" is established when it is specifically demonstrated that disclosure will cause a clearly defined and serious injury. See *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 786 (3d Cir. 1994); *see also Romero v. Drummond Co., Inc.*, 480 F.3d 1234, 1246 (11th Cir. 2007).

34. In determining whether good cause exists, courts balance the public's right of access against the party's interest in keeping the information confidential. *See Chicago Tribune*, 263 F.3d at 1311.

35. The Eleventh Circuit has recognized that privacy interests may outweigh the public's right of access, particularly where disclosure would lead to intimidation. *See In re Alexander Grant & Co. Litigation*, 820 F.2d 352, 355-356 (11th Cir. 1987). The Eleventh Circuit identified four factors for ascertaining the existence of good cause which include: "the severity and the likelihood of the perceived harm; the precision with which the order is drawn; the availability of a less onerous alternative; and the duration of the order." *Id.* at 356.

36. In this case, the evidence of past actual online harassment, previous threats of physical harm, the chilling effect on potential witnesses, and Defendant McNally's social followers' and viewers' willingness to search for information to harass Plaintiff, its employees and their loved ones and family, provides compelling good cause for sealing the Hearing Materials from public access so that only the

parties' attorneys can view the Hearing Materials.

37. The Court has authority to seal records pertaining to financial and proprietary business information where right to access may be overcome by a showing of good cause . . . which requires balancing the asserted right of access against the other party's interest in keeping the information confidential." *See In U.S. All Star Fed'n v. Open Cheer & Dance Championship Series, LLC*, No. 6:21-cv-2135-WWB-DCI (M.D. Fla. Jan. 16, 2024) (granting a motion to seal documents that included business and marketing plans, proposed partnerships, customer sales, pricing, revenue, expenses, operating costs, and profit information).

38. In this case, the continued disclosure of Proven's internal financial data, marketing strategies, customer communications, and operational impacts would cause direct harm to the business and invite further disruptions by Defendant's McNally's social media followers and viewers. Continued disclosure of the Hearing Materials could allow Defendant McNally's social media followers and viewers to use this information to fuel harassment through widespread engagement with Defendant's videos and commentary.

## VI. PROPOSED DURATION OF SEAL

39. Plaintiff proposes that the Hearing Materials remain sealed for a period of ninety (90) days from the date of the Court's order granting this motion. This short period may be enough to allow Defendant McNally's followers to lose interest in harassing Plaintiff, its' employees and their family members and loved ones.

40. After ninety days, Plaintiff proposes that the Court review the continued necessity of the seal, at which time Plaintiff may move to extend the seal upon a showing that the risk of harassment and intimidation remains. *See Rodriguez v. United*

*States*, 11-20338-CR-MIDDLEBROOKS, CASE NO.: 15-23835-CIV-MIDDLEBROOKS/Brannon (S.D. Fla. Mar 17, 2021) (noting that records were initially sealed due to potential reputational harm, but were later unsealed after the court balanced the public's right of access against privacy interests).

## VII. AUTHORIZED PERSON TO RETRIEVE SEALED ITEMS

41. The persons authorized to retrieve sealed, tangible items are:

Derek R. Fahey, Esq.
Fla. Bar. No. 88194
The Plus IP Firm, PLLC
101 N.E. 3rd Ave., Suite 1500
Fort Lauderdale, Florida 33301
Telephone: (954) 332-3584
Email: Derek@plusfirm.com

Austin R. Nowacki, Esq.
Fla. Bar. No. 1016961
The Plus IP Firm, PLLC
Telephone: (954) 332-3584
Email: austin@plusfirm.com

Ken G. Turkel, Esq.
Fla. Bar. No. 867233
Turkel Cuva Barrios, P.A.
100 N. Tampa Street, Suite 1900
Tampa, FL 33602
Telephone: 813-834-9191
Email: kturkel@tcb-law.com

David A. Hayes, Esq.
Fla. Bar. No. 96657
Turkel Cuva Barrios, P.A.
100 N. Tampa Street, Suite 1900
Tampa, FL 33602
Telephone: 813-834-9191
Email: dhayes@tcb-law.com

## VIII. CERTIFICATION OF NOTIFICATION TO NON-PARTIES

42. To the best of Plaintiff's knowledge and belief, there are no non-parties who have an interest in establishing or maintaining the seal of these items.

## IX. CONCLUSION

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter an Order:

43. Granting Plaintiff's Motion to Seal limiting public access to only the attorneys identified above;

44. Directing the Clerk to place under seal the following documents:

   a. Plaintiff's Emergency Motion for Preliminary Injunction and supporting documents [DE 10-1 to DE 10-30];

   b. Order Setting Hearing [DE 12] and Notice of Hearing [DE 13];

   c. Defendant's Response In Opposition to Plaintiff's Motion Emergency Motion for Preliminary Injunction [DE 014] and Declaration of Trevor McNally and supporting documents [DE 15-01 to DE 15-13];

   d. Plaintiff's Reply [DE 17] to Defendants Response in Opposition and proposed order [DE 17-1], Second Supplemental Declaration of Anthony Sansone [DE 18], Notice of Manual Filing [DE 18-1] and corresponding exhibit [DE 18-2] to Declaration of Anthony Sansone's Second Supplemental Declaration;

   e. Plaintiff's Exhibit List [DE 19] and Plaintiff's Witness List [DE 20];

   f. Defendant's Exhibit List [DE 22] and Defendant's Witness List [DE 21];

   g. The Clerk's minutes [DE 25] from the hearing held on June 13, 2025, regarding Plaintiff's Emergency Motion for Preliminary Injunction;

   h. Defendant's Exhibit List for Preliminary Injunction Hearing [DE 26]

pursuant to the Court's Order dated June 3, 2025 [DE 12];

i. Plaintiff's Exhibit List for Preliminary Injunction Hearing [DE 27] pursuant to the Court's Order dated June 3, 2025 [DE 12];

j. The Court's yet to be issued Order denying Plaintiff's Emergency Motion for Preliminary Injunction for copyright infringement and defamation by implication and transcription of the June 13th hearing;

k. This Motion to Seal and accompanying exhibits.

45. Ordering that the seal remain in effect for ninety (90) days from the date of the Court's order granting this motion, subject to review thereafter; and

46. Granting such other relief as the Court deems just and proper.

**Local Rule 3.01(g) Certification**

Pursuant to Local Rule 3.01(g), undersigned counsel certifies that counsel for Plaintiff conferred with Defendant's counsel by email on June 19th and by telephone on June 20th regarding the relief requested herein. Defendant opposes the relief requested herein.

Respectfully submitted this 20th day of June 2025.

/Derek Fahey/
Derek R. Fahey, Esq.
The Plus IP Firm, PLLC
Fla. Bar. No. 88194
101 N.E. 3rd Ave., Suite 1500
Fort Lauderdale, Florida 33301
Telephone: (954) 332-3584
Email: Derek@plusfirm.com
*Attorney for Plaintiff*
*LEAD ATTORNEY TO BE NOTICED*

**Certificate of Service**

I HEREBY CERTIFY that on June 20, 2025, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

/Derek Fahey/
Derek Fahey, Esq.